**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6150

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

RYAN COURTADE,

        Defendant - Appellant,

_____

NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS; WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW ADVANCED ADMINISTRATIVE LITIGATION CLINIC,

        Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca Beach Smith, District Judge. (2:15-cr-00029-RBS-LRL-1; 2:16-cv-00736-RBS)

Argued: April 2, 2019                       Decided: July 3, 2019

Before GREGORY, Chief Judge, and KING, Circuit Judge.[1]

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge King joined.

---

[1] Judge Thacker was unable to participate in oral argument. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

**ARGUED:** Gregory M. Lipper, CLINTON BROOK & PEED, Washington, D.C., for Appellant. Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. Danielle Alexandria Phillips, WASHINGTON & LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Amicus Washington and Law University School of Law Administrative Litigation Clinic. **ON BRIEF:** Matthew J. Peed, CLINTON BROOK & PEED, Washington, D.C., for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Elizabeth M. Yusi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. Elizabeth A. Franklin-Best, Vice-Chairperson Amicus Committee, NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, Columbia, South Carolina; Jonathan L. Marcus, Paul M. Kerlin, Shekida Smith, Ryan Travers, Jeongu Gim, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, for Amicus National Association of Criminal Defense Lawyers. Timothy C. MacDonnell, WASHINGTON & LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Amicus Washington and Law University School of Law Advanced Administrative Litigation Clinic.

————————

GREGORY, Chief Judge:

Appellant Ryan Courtade seeks post-conviction relief in connection with his guilty plea for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The district court denied Courtade's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Finding no error, we affirm the judgment of the district court.

I.

In August 2014, investigators with the Chesapeake Police Department received a complaint from Courtade's wife alleging that she had discovered Courtade in the bedroom of Jane Doe, his 14-year-old stepdaughter, kneeling by the bed with his hands underneath the sheets while she was asleep. When the police arrived at the residence, an officer found Courtade inside his car breaking a CD. The officer asked Courtade what was on the CD, and he responded that there was "a video of Jane Doe, naked and in the shower." A member of the U.S. Navy who had served as a combat photographer, Courtade said that he had instructed Jane Doe to take the camera—a GoPro video camera belonging to the Navy—into the shower with her "to see if the camera was waterproof." With Courtade's consent, the police then seized computers and other equipment from the residence. On a laptop was a 24-minute video of Jane Doe showering.

According to a Statement of Facts that Courtade signed, the video begins with Courtade turning on the camera and placing it on the bathroom counter facing the shower. Courtade speaks with Jane Doe and then leaves, at which point Jane Doe "undresses completely, gets in the shower, closes the shower curtain, and turns on the

3

shower." Jane Doe then calls for Courtade, who reenters the bathroom and hands her the camera over the shower rod. Jane Doe holds the camera under the water before returning it to Courtade, who reviews the camera and hands it back to Jane Doe with instructions to put it on the shower floor. Jane Doe complies and then gives the camera back to Courtade. Courtade again places the camera on the bathroom counter facing the shower and leaves the bathroom. Jane Doe "peeks out at the camera a few times," and then exits "at the far end of the shower, drops to the floor, and crawls out of the view of the camera below the countertop." She reappears at the other side of the camera's frame, "dries off, gets dressed," and leaves the bathroom. During the video, Jane Doe's "breasts and genitals are visible at various points."

In March 2015, a grand jury returned a two-count indictment against Courtade, and a superseding indictment followed. Count One charged Courtade with production of child pornography in violation of 18 U.S.C. § 2251(a), and Count Two charged him with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). In July 2015, the government offered Courtade a plea deal on Count Two, which carried no mandatory minimum and a 10-year statutory maximum. Count One had a 15-year mandatory minimum and a 30-year statutory maximum. As the government explained, it was offering this plea deal to prevent Jane Doe from having to testify.

In August 2015, Courtade's counsel filed a series of pretrial motions, including a motion to dismiss the indictment. Counsel argued principally that the video of Jane Doe showering did not depict a minor engaging in "sexually explicit conduct" within the meaning of the statute. As relevant here, that term is defined as the "lascivious exhibition

4

of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). Counsel reasoned that the statutory definition is not met because "[t]he alleged victim in this video is simply showering"—she is "never involved in any provocative or sexually-themed poses or actions," and although her pubic area is visible at times, the video "is filmed in its entirety in a fixed-zoom manner that is never adjusted to aim for a specific portion or private region of [her] body." In sum, the video "merely depicts nudity, and not sexually explicit conduct."

Despite moving to dismiss the indictment, Courtade's counsel eventually took a different position on the case's merits after doing more research and talking with the government's lawyers. Specifically, counsel testified that the government pointed him to cases outside the Fourth Circuit that evaluated the "mindset of the defendant" in making the video in addition to assessing the content of the video itself—case law that "caused [him] some greater concern as to the validity of the motion that [he] had filed," especially because the Fourth Circuit had no precedent on the meaning of "lascivious exhibition." And if the motion to dismiss and the other pretrial motions were denied, counsel testified, potentially "a lot of damaging evidence [] was going to come into trial in this case." For these reasons, counsel concluded that the motion to dismiss "was essentially a no go" and "felt that the plea was the best option" for Courtade. Counsel explained this reasoning to Courtade, advised him that the Jane Doe video met the definition of "sexually explicit conduct," and told him that he was guilty of the charged offense.

Courtade pleaded guilty to one count of possession of child pornography, and a magistrate judge accepted the plea agreement at a hearing held on August 25, 2015. As

5

part of the agreement, Courtade "waive[d] the right to appeal the conviction and any sentence within the statutory maximum . . . (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatsoever." Courtade also stipulated to the Statement of Facts describing the circumstances of his arrest and the contents of the video.

In December 2015, the district court held a sentencing hearing. The court noted that Courtade's Sentencing Guidelines range was 210–262 months, a range that exceeded the 10-year statutory maximum for the possession charge to which he pleaded guilty. The court then sentenced Courtade to the 10-year term, along with lifetime supervised release, and dismissed the production charge. No direct appeal was taken.

On December 22, 2016, Courtade, with new counsel, filed a motion under 28 U.S.C. § 2255 alleging the following grounds for relief. First, he claimed that he pleaded guilty to conduct that is not criminal under 18 U.S.C. § 2252(a)(4)(B) because the video does not show a minor engaging in "sexually explicit conduct" as defined in 18 U.S.C. § 2256(2)(A). Second, Courtade argued that his guilty plea was not voluntary and intelligent because he did not understand that the conduct to which he pleaded guilty was not criminal. Third, he alleged that the district court violated Federal Rule of Criminal Procedure 11(b)(3) by failing to determine a proper factual basis for his guilty plea. And fourth, Courtade contended that counsel provided ineffective assistance, including by failing to consult with him about an appeal.

Attached to the § 2255 motion were several exhibits. As relevant here, Courtade attached as an exhibit a transcript of the audio from the Jane Doe video. That transcript

6

reveals two more facts important to our analysis. First, at the beginning of the video, Courtade lies to Jane Doe and tells her that the camera "is off" and "can't record you." *See Courtade v. United States*, No. 16-cv-736, 2017 WL 6397105, at *2 (E.D. Va. Dec. 13, 2017). Second, Courtade induces Jane Doe to film herself by promising her ice cream as a reward after her shower.[2] *Id.* at *2–3.

On December 13, 2017, the district court issued an order denying the § 2255 motion. *See id.* at *15. The court rejected Courtade's first three grounds for relief as procedurally defaulted because he failed to file a direct appeal and could not satisfy the actual innocence exception to procedural default. *Id.* at *5–10. The court held in particular that Courtade was not actually innocent because the video of Jane Doe does in fact depict "sexually explicit conduct" in portraying a "lascivious exhibition of the anus, genitals, or pubic area."[3] 18 U.S.C. § 2256(2)(A)(v). Turning to the ineffective assistance ground for relief, the court rejected this claim as well, holding that counsel was not ineffective for failing to consult with Courtade about filing an appeal. *See Courtade*, 2017 WL 6397105, at *11–14. The court thus denied the motion in full.

---

[2] As the government states, the Presentence Report ("PSR") contains additional facts concerning Courtade's conduct. The district court acknowledged the existence of these facts but declined to rely on them in denying the § 2255 motion. *See Courtade*, 2017 WL 6397105, at *7 n.5.

[3] The court also denied the first three grounds for relief on the merits to the extent they asserted or relied on the claim that Courtade's conduct was not criminal under 18 U.S.C. § 2252(a)(4)(B). *See Courtade*, 2017 WL 6397105, at *10. And the court denied a "jurisdictional" challenge that Courtade brought for similar reasons. *Id.* at *11.

Courtade timely appealed. In November 2018, this Court granted a certificate of appealability on (1) whether Courtade was actually innocent of possession of child pornography and (2) whether counsel provided ineffective assistance by failing to consult with Courtade about nonfrivolous grounds for appeal.

## II.

## A.

On appeal, Courtade first contends that he is actually innocent of possession of child pornography because the video of Jane Doe showering does not depict a minor engaging in "sexually explicit conduct" under 18 U.S.C. § 2252(a)(4)(B). And because he is actually innocent, Courtade argues, his procedural default should be excused and his guilty plea deemed invalid and vacated. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (holding that a defendant may raise a procedurally defaulted claim if he can demonstrate actual innocence).

Before taking up Courtade's actual innocence claim, we address briefly arguments from the government about why Courtade should not be permitted to make such a claim in the first place. None of these arguments has merit.

The government first argues that Courtade cannot bring an actual innocence claim under *Bousley* because his claim depends on the construction of a statute and he has failed to identify any "new, binding precedent [that] has changed the law applicable to the statute of conviction," a requirement for such a claim. As even the government recognizes, however, this Court has previously entertained actual innocence claims on the

8

merits where the claims turned on issues of statutory construction and there was no intervening change in the law. *See United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012) (addressing merits of actual innocence claim where petitioner argued that the district court erred in construing the statute of conviction to encompass the conduct admitted in the guilty plea); *see also United States v. Burleson*, 815 F.3d 170, 176 (4th Cir. 2016) (finding petitioner actually innocent where he pleaded guilty to a felon-in-possession charge in 2013 but we determined—based on our reading of the relevant statute and a 1992 decision from this Court—that his prior convictions failed to qualify as predicates necessary to sustain the conviction). We thus reject the government's argument in this regard.

The government also contends that Courtade cannot pursue his actual innocence claim because his guilty plea itself bars such a claim and so does the appellate waiver in the plea agreement. Our case law again indicates otherwise. *See Fugit*, 703 F.3d at 253–54 (addressing actual innocence claim on the merits despite a guilty plea and no intervening change in the law); *see also United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016) (stating that "[w]e will refuse to enforce an otherwise valid [appeal] waiver if to do so would result in a miscarriage of justice" and explaining that a cognizable claim of actual innocence meets this standard and compels the conclusion that the § 2255 motion falls outside the waiver's scope). The government thus cannot successfully argue that the guilty plea or appeal waiver bars Courtade's claim.

We turn now to the merits of the § 2255 motion. To establish that he is actually innocent of possession of child pornography, Courtade "must demonstrate that, in light of

9

all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)) (internal quotation marks omitted). Actual innocence "means factual innocence, not mere legal insufficiency." *Id.*

Courtade's actual innocence claim turns ultimately on our interpretation of 18 U.S.C. § 2252(a)(4)(B), the statute of conviction. That statute criminalizes in relevant part "knowingly possess[ing] . . . 1 or more [matters] . . . which contain any visual depiction . . . which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if (i) the producing of such visual depiction involves the use of a *minor engaging in sexually explicit conduct*; and (ii) such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(4)(B) (emphasis added). "Sexually explicit conduct" is defined as "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) *lascivious exhibition of the anus, genitals, or pubic area of any person*." 18 U.S.C. § 2256(2)(A) (emphasis added). The question in this case is whether the video of Jane Doe depicts a "lascivious exhibition of the anus, genitals, or pubic area" under the statute.

We begin with the statutory text. *See Chris v. Tenet*, 221 F.3d 648, 651 (4th Cir. 2000) ("Statutory interpretation necessarily begins with an analysis of the language of the statute."). As an initial matter, we agree with Courtade that the statute by its terms "requires more than mere nudity, because the phrase 'exhibition of the genitals or pubic area' . . . is qualified by the word 'lascivious.'" *United States v. Villard*, 885 F.2d 117,

10

124 (3d Cir. 1989) (citation omitted); *see also United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) (explaining that "the statute requires more than mere nudity"). Based on the statutory language, then, that Jane Doe appears nude in the video cannot suffice to prove that the video meets the statutory definition. If that were so, the word lascivious would become superfluous. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (courts must give effect to every provision of a statute).

This Court has no precedent interpreting the term "lascivious exhibition" as used in § 2256(2)(A)(v). "When analyzing the meaning of an undefined statutory term, 'we must first determine whether the language at issue has a plain and unambiguous meaning.'" *Fugit*, 703 F.3d at 254 (quoting *Chris*, 221 F.3d at 651). According to *Webster's*, "lascivious" means "inclined to lechery: lewd, lustful" or "tending to arouse sexual desire: libidinous, salacious." *Webster's Third New International Dictionary* 1274 (2002); *see also Black's Law Dictionary* 1013 (10th ed. 2014) (defining the term as "tending to excite lust; lewd; indecent; obscene"). And "exhibit" means "to present to view: show, display" or "to show publicly: put on display in order to attract notice to what is interesting or instructive or for purposes of competition or demonstration." *Webster's Third* at 796. Taken together, these definitions indicate that "lascivious exhibition" means "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994) (citing *Webster's* and *Black's Law*).

11

Many courts, recognizing that applying the term "lascivious exhibition" is not always easy, have looked to the six factors articulated in *United States v. Dost* as guideposts in determining whether conduct meets the statutory definition. 636 F. Supp. 828, 832 (S.D. Cal. 1986) (explaining that the factors are neither controlling nor exhaustive). As Courtade points out, however, the *Dost* factors have been subject to criticism over the years. *See, e.g.*, *United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006) (observing that the factors "have fostered myriad disputes that have led courts far afield from the statutory language"). Particularly divisive has been the sixth factor, which potentially implicates subjective intent and asks whether the depiction is intended or designed to elicit a sexual response in the viewer.[4] *See United States v. Brown*, 579 F.3d 672, 682–83 (6th Cir. 2009) (explaining that "[s]ome courts have accepted arguments that lasciviousness should be determined from the image alone" and "[o]ther courts have explicitly avoided the question"). Courtade indeed argues at length that his subjective intent or motive in creating the video is irrelevant to our analysis, and that considering his intent would be at odds with the statutory language and would raise concerns under the Due Process Clause and the First Amendment.

In this case, we need not venture into the thicket surrounding the *Dost* factors or define the parameters of any subjective-intent inquiry, because we can dispose of this

---

[4] The other factors are: (1) whether the depiction focuses on the child's genitalia or pubic area; (2) whether it is sexually suggestive, i.e., in a place or pose associated with sexual activity; (3) whether the child is depicted in an unnatural pose or inappropriate attire; (4) whether the child is clothed or nude; and (5) whether the depiction suggests sexual coyness or a willingness to engage in sexual activity. *Dost*, 636 F. Supp. at 832.

case based on the objective characteristics of the video alone. The plain meaning of "lascivious exhibition" requires that we ask whether the video depicts Jane Doe's genitals or pubic area "in order to excite lustfulness or sexual stimulation in the viewer." *Knox*, 32 F.3d at 745. Here, the video's objective characteristics—the images and audio contained within its four corners, irrespective of Courtade's private subjective intentions—reveal the video's purpose of exciting lust or arousing sexual desire within the plain meaning of "lascivious exhibition."

Far from depicting merely a girl showering, drying off, and getting dressed, the video contains extensive nudity—including shots of her breasts and genitals—that is entirely the product of an adult man's deceit, manipulation, and direction as captured in the video.[5] As the district court found, Courtade tricks Jane Doe into undressing by lying to her about wanting to "test" whether the camera is waterproof—a test he could have conducted himself by (for example) holding the camera under a running tap. *Courtade*, 2017 WL 6397105, at *9 & n.10.[6] Courtade lies to Jane Doe again by reassuring her—before she begins showering—that the camera is off and cannot record her. *Id.* Once Jane Doe takes the camera in the shower, Courtade directs her on how to hold and position it, ensuring that the camera records her nude body. *See, e.g.*, *id.* at *8 (directing

---

[5] The district court reviewed the video in camera and made these factual findings, which we review for clear error. *See United States v. Roane*, 378 F.3d 382, 395 (4th Cir. 2004). The court also based its findings on the Statement of Facts and the audio transcript of the video that was attached to the § 2255 motion.

[6] As the district court further observed, Courtade leaves the camera on to continue recording Jane Doe in the shower even after his test has ended. *See id.* at *8 & n.8.

13

her to "hold [the camera] like arm's length in front of you . . . so the back is away from you"); *id.* (instructing her to "set it back down on the [shower] floor there," where it continues recording her shower). Courtade himself also takes an active role in filming Jane Doe's nude body, at one point holding the wide-angle camera above the shower rod—long after he has "tested" the waterproof quality of the camera—and deliberately angling the camera lens down in such a way as to capture even more footage of Jane Doe's breasts and genitals. *See id.* And while Jane Doe is showering, moreover, Courtade can be heard promising her ice cream as a reward for testing the camera. *See id.* at *9.

On its face, then, the video depicts not simply a young girl nude in the shower. Its images and audio reveal a young girl deceived and manipulated by an adult man into filming herself nude in the shower, and methodically directed to do so in a way that ensures she records her breasts and genitals. *See United States v. Ward*, 686 F.3d 879, 883–84 (8th Cir. 2012) ("When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex." (citation omitted)). The video also reveals an adult man himself filming a teenage girl's breasts and genitals as she showers. Under these circumstances, we are satisfied that the video objectively depicts a "lascivious exhibition" because the images and audio—revealing deceit, manipulation, and the careful directing and filming of a young girl resulting in footage of her breasts and genitals—make clear that the video's purpose was to excite lust or arouse sexual desire in the viewer. *See*

14

*Knox*, 32 F.3d at 745.[7]  This conclusion requires no probing of Courtade's subjective intent or any sustained examination of his motives; it follows from the video itself, and would thus be apparent to any reasonable viewer.

On this record, therefore, Courtade has failed to show that "it is more likely than not that no reasonable juror would have convicted him."  *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327–28).  A reasonable jury indeed could have found that the Jane Doe video depicts a "lascivious exhibition of the anus, genitals, or pubic area" and convicted Courtade of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  For this reason, Courtade's actual innocence claim fails, and his first three grounds for relief are procedurally barred.

B.

Courtade separately contends that plea counsel provided ineffective assistance by failing to consult with him about filing an appeal.  This claim is not subject to procedural default.  *See Massaro v. United States*, 538 U.S. 500, 503–04 (2003).

In *Roe v. Flores-Ortega*, the Supreme Court held that counsel has a constitutional duty to consult with a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are

---

[7] *Cf. Amirault*, 173 F.3d at 30, 33–34 (finding no lascivious exhibition where the depiction had been downloaded from the internet and was "a photograph of a young naked female, probably a teenager," standing "face forward, in a hole in the sand, with her feet below the ground" and with her pubic area visible at the bottom of the photo); *Villard*, 885 F.2d at 123–25 (finding no lascivious exhibition where "closein" photographs showed a young boy lying naked on a bed with his eyes closed, his knees "bent slightly upwards," and a "three quarters erection").

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. 470, 480 (2000). Before this Court, Courtade argues only that counsel was constitutionally deficient in failing to consult with him because a rational defendant would have wanted to appeal given the nonfrivolous argument that his conduct did not constitute a crime.[8] *See Bostick v. Stevenson*, 589 F.3d 160, 167 n.9 (4th Cir. 2009) (ground for appeal need not prove meritorious to be nonfrivolous).

Under the circumstances of this case, Courtade cannot show that a rational defendant in his position would have wanted to appeal.[9] *See Flores-Ortega*, 528 U.S. at 480 (stating that "[o]nly by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal"); *see also United States v. Cooper*, 617 F.3d 307, 313–14 (4th Cir. 2010). Courtade pleaded guilty and executed a broad appellate waiver, and he otherwise indicated a desire for the

---

[8] Courtade unsuccessfully argued the second prong before the district court—that he tried to speak with counsel about appealing—but he does not press that argument before this Court. It is thus forfeited. *See United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (distinguishing waiver from forfeiture and defining forfeiture as "the failure to make the timely assertion of a right" (citation omitted)). Even if we were to address the argument, however, the district court committed no error in finding that the record does not support Courtade's assertion that he reasonably demonstrated to his attorneys that he was interested in appealing. *See Courtade*, 2017 WL 6397105, at *14.

[9] We note that Courtade's appellate waiver does not bar him from making this showing. *See United States v. Poindexter*, 492 F.3d 263, 271 (4th Cir. 2007) (explaining that "an attorney in an appeal waiver case still owes important duties to the defendant," including the duty to consult with him about an appeal under *Flores-Ortega*); *see also Adams*, 814 F.3d at 182 (declining to enforce appeal waiver where petitioner alleged actual innocence).

proceedings to end, including through providing a written statement (as reflected in the PSR) that "I truly hope that my acceptance of responsibility and my plea of guilty to this offense will assist in the healing process for all who have been impacted by my conduct." *See Flores-Ortega*, 528 U.S. at 480 (explaining that "a highly relevant factor" in the inquiry is whether the defendant pleaded guilty "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings"); *see also id.* (stating that "the court must consider . . . whether the plea expressly reserved or waived some or all appeal rights").

In return for his plea, moreover, Courtade received dismissal of the more serious production charge, which carried a 15-year mandatory minimum and a 30-year maximum. *See id.* (court must consider "whether the defendant received the sentence bargained for as part of the plea"). Courtade's guilty plea also spared Jane Doe from having to testify, another significant consideration in determining whether a defendant in his position would have wanted to appeal.

For these reasons, and where counsel properly advised Courtade of the risks of going to trial given the unfavorable case law and Courtade understood these risks (foremost among them losing his plea deal), we conclude that Courtade has failed to show that a defendant in his position would have wanted to appeal. Counsel was therefore not constitutionally deficient in failing to consult with Courtade about taking an appeal, and his ineffective assistance claim fails.

17

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*