**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-4612**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

MARSHALL M. COHEN,

        Defendant – Appellant.

---

Appeal from the United States District Court for the District of South Carolina, at Charleston. Bruce H. Hendricks, District Judge. (2:20-cr-00433-BHH-1)

---

Argued: December 8, 2022                           Decided: March 20, 2023

---

Before WILKINSON and HEYTENS, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Wilkinson and Judge Hudson joined.

---

**ARGUED:** Jeremy A. Thompson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Elliott Bishop Daniels, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Corey F. Ellis, United States Attorney, Columbia, South Carolina, Andrew R. de Holl, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

---

TOBY HEYTENS, Circuit Judge:

It is now axiomatic that a statute "means what it says." *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016). Conditions of supervised release are similar. Though not needing to be "craft[ed] . . . with exhaustive specificity," such conditions are still given their "commonsense meaning." *United States v. Comer*, 5 F.4th 535, 541–42 (4th Cir. 2021). Applying that principle here, we affirm in part, vacate in part, and remand for further proceedings.

## I.

In 2016, Marshall Cohen pleaded guilty to distributing child pornography and was sentenced to five years in prison followed by five years of supervised release. The sentencing court later agreed to transfer Cohen's supervision to South Carolina so long as he consented to new conditions. The new conditions required Cohen to "participate in a sex offender treatment program," JA 35, and forbade him from possessing audio or visual depictions containing sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A).

After moving to South Carolina, Cohen began an approved sex offender treatment program, whose rules forbid dating websites and pornography. About ten months later, a probation officer learned Cohen had been discussing sexual fetishes and exchanging pictures of his erect penis for photos of women's breasts on social media. When the probation officer told Cohen's treatment provider, the provider responded that Cohen's behavior violated the program's pornography rules and would be raised at an upcoming group therapy session.

The district court directed probation to issue a warrant for Cohen's arrest for

2

violating the terms of his supervised release. At the revocation hearing, Cohen admitted trading photos of his erect penis for pictures of undressed women during sexually explicit conversations but argued his behavior did not violate his supervised release conditions.

The district court disagreed. The court concluded Cohen's violation of the program's pornography rules amounted to nonparticipation in the program, and that Cohen's photos contained depictions of sexually explicit conduct. The court thus revoked Cohen's release. The district court sentenced Cohen to time served followed by lifetime supervision during which he would be subject to various special conditions. The court also overruled Cohen's objection to new special condition eleven, which—as explained in more detail below—prevents Cohen from possessing certain materials or visiting various places.

"[W]e review a district court's factual findings underlying a revocation [of supervised release] for clear error" and its "ultimate decision to revoke a defendant's supervised release for abuse of discretion." *United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015). We also "review the court's decision to impose a condition of supervised release for an abuse of discretion." *United States v. Holman*, 532 F.3d 284, 288 (4th Cir. 2008). As always, "[i]t is an abuse of discretion . . . to commit a legal error." *United States v. Barko*, 728 F.3d 327, 338 (4th Cir. 2013) (quotation marks omitted).

## II.

### A.

The district court erred in concluding Cohen violated the condition requiring him to "participate in a sex offender treatment program" by failing to follow the rules of that program. JA 35.

3

As a matter of "commonsense meaning," there is a difference between participating in something and perfect compliance with the rules of that thing. *Comer*, 5 F.4th at 542. To "participate" normally means "to take part," such as by "participat[ing] in class discussions."[1] A student who speaks before being called on is surely a rule-breaker, but—like a player who fouls an opponent during a match—"participates" all the same.

It is true, of course, that at some point noncompliance with rules may become so frequent or severe as to preclude further participation. A student caught cheating on a midterm, for instance, may be expelled from the class. But here the treatment provider itself did not consider Cohen's rules violation to be disqualifying. To the contrary, by stating it would discuss Cohen's behavior during an upcoming group therapy session, the provider assumed Cohen's continuing participation. This response aligns with other therapeutic contexts. A recovering alcoholic who drinks between meetings would be considered to have slipped or lapsed rather than to have quit or been expelled from the program.[2] So too here.

The government's emphasis on "the breadth of the district court's discretion" does not alter the analysis. Gov't Br. 13. True, we review a district court's "*ultimate* decision" about whether to revoke supervised release for abuse of discretion. *Padgett*, 788 F.3d at 373 (emphasis added). But the dispute here turns on what "participate" means, and we do

---

[1]  *Participate*,  Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/participate (last visited Mar. 7, 2023).

[2] See *Slip vs. Relapse: What's the Difference*, Alcoholic Anonymous, https://alcoholicsanonymous.com/addictions/slip-vs-relapse/ (last visited Mar. 7, 2023).

not defer to district courts about such purely legal matters. See, *e.g.*, *Comer*, 5 F.4th at 541 (vagueness challenge to condition of supervision); see also *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984) (contract interpretation); *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 242–43 (4th Cir. 2009) (statutory interpretation).

Nor are we troubled by the government's protest that affording "participate" its ordinary meaning would render the condition toothless. For one thing, requiring Cohen to take part in a treatment program he would otherwise have a constitutional right to refuse is no small thing. See generally *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (acknowledging "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"). At any rate, we read legal texts for what they say, not what we think they ought to have said. See, *e.g.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002). Because the district court identified no other basis for concluding Cohen violated the participation condition, its determination on that point was legally erroneous.[3]

## B.

The district court's error in concluding Cohen violated the participation condition does not end our inquiry. The court also revoked Cohen's supervision because he possessed

---

[3] We note the district court could have avoided this issue with more carefully drafted conditions of release. See, *e.g.*, *United States v. Williams*, No. 2:18-CR-00164-RMG, 2019 WL 2395238, at *1 (D.S.C. Apr. 23, 2019) ("The defendant shall *satisfactorily* participate in *and complete* a Cognitive Behavioral Treatment Program as approved by the U.S. Probation Office." (emphasis added)); *United States v. Herrmann*, No. 1:10CR00091-001, 2010 WL 9069999 (E.D. Va. July 16, 2010) ("The defendant must participate in, *and successfully complete*, an approved mental health treatment program." (emphasis added)).

5

visual depictions of "actual or simulated . . . lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A). We see no error in that determination.

As this Court has explained, "lascivious exhibition means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area . . . to excite lustfulness or sexual stimulation in the viewer." *United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019) (quotation marks omitted). Cohen insists the district court erred in concluding the pictures at issue were lascivious based solely on the fact that they contain an erect penis. We agree it would be legal error to rely on such reasoning, but we see no indication the district court did so. Instead, the court determined these specific pictures— exchanged in the context of a sexual conversation with no conceivable other purpose— were designed to titillate their recipients. Such an approach is well supported by the record and fully consistent with this Court's precedent. See *id.* at 192, 193 (explaining that where an image's "objective characteristics" made clear it was designed to sexually stimulate its viewers, it was unnecessary to consider anyone's "private subjective intentions" or conduct a "sustained examination of . . . motives").

## C.

Under the circumstances, we see no need to vacate the district court's order revoking Cohen's supervised release. Our conclusion may well be different had the district court revoked Cohen's supervision because of multiple unrelated incidents or independent violations. But here, both violations found by the district court were based on the same conduct, and we see no reason to believe the court would not have revoked Cohen's supervision had it properly classified his undisputed behavior as one violation rather than

two. We thus hold the district court did not exceed its discretion in revoking Cohen's

supervised release. See 18 U.S.C. § 3583(e)(3).

III.

We turn next to Cohen's overbreadth challenge to new special condition eleven. To

make our discussion easier to follow, that condition can be broken down into four parts.

Special condition eleven states Cohen:

> [1] must not possess, access, subscribe to, or view any videos, magazines, literature, photographs, images, drawings, video games, or Internet web sites depicting children or adults in the nude and/or engaged in sexual activity[], and

> [2] may not patronize businesses or places whose primary purpose is to provide sexually-oriented material or entertainment[,] [and] . . .

> [3] must not possess any materials depicting and/or describing "child pornography" and/or "simulated child pornography" as defined in 18 U.S.C. § 2256[,] [and] . . .

> [4] must not enter a place where such materials can be obtained or viewed, electronically or otherwise.

JA 56. (Although Cohen challenges only clauses 1, 2, and 4, we included clause 3 for

continuity's sake and because it will become important to our discussion later.)

We agree with Cohen that clause 1 is overbroad. Special conditions of supervision

may restrict only as much of a person's liberty as reasonably necessary to further the

purposes of sentencing. See *United States v. Hamilton*, 986 F.3d 413, 417 (4th Cir. 2021).

And yet clause 1 has breathtaking reach. By its terms, clause 1 covers seemingly *any* visual

or written medium in which *any* person is "depict[ed]" either "in the nude" (a term that

goes undefined) *or* "engaged in sexual activity" (ditto). On its face, this condition would

7

prevent Cohen from watching a great many things on network television and counsels strongly against ever turning on HBO. It also prohibits Cohen from "viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus." *United States v. Simons*, 614 F.3d 475, 483 (8th Cir. 2010). Not surprisingly, other courts have concluded similar conditions go too far. See, *e.g.*, *id.*; *United States v. Siegel*, 753 F.3d 705, 712 (7th Cir. 2014).

The government insists clause 1 covers only "visual portrayals of nudity or sexual activity" and thus would not bar "classic works like the Bible." Gov't Br. 46–47. But that view cannot be squared with clause 1's text, which expressly includes depictions in "literature." JA 56. Nor are we comforted by the government's assurances that—even if clause 1 is overbroad as written—Cohen need not worry because the district court would not actually enforce the restriction to its full scope. We know of no authority supporting this "trust us" theory of interpretation, and we will not put Cohen to the choice of submitting to an unwarranted deprivation of his liberty or flouting the plain language of his terms of supervised release in the hope that probation and the district court will implicitly rewrite those terms.

Nor do Cohen's characteristics or history justify such a restrictive clause. To be sure, we have upheld broadly worded conditions aimed at "crucial instrumentalities" of a defendant's illegal conduct. *Comer*, 5 F.4th at 546. But clause 1 covers types of materials (literature, video games, and magazines) that Cohen does not appear to have ever used to further illegal conduct and prohibits *any* depictions of nudity even though all of Cohen's prior violations involved nudity of a sexually prurient nature. Because clause 1 imposes a

8

greater deprivation of liberty than reasonably necessary, we hold the district court exceeded its discretion by imposing it. See 18 U.S.C. § 3583(d)(2).[4]

We part company with Cohen, however, when it comes to clause 2 and clause 4. By restricting access only to places whose "primary purpose" is to provide sexually oriented materials, clause 2 excludes businesses like mainstream bookstores and gas stations, and thus draws narrower bounds than the condition held impermissible in *United States v. Ellis*, 984 F.3d 1092, 1101 (4th Cir. 2021). We thus reject Cohen's overbreadth and vagueness challenges to that clause.

We also reject Cohen's challenge to clause 4. Cohen's objection assumes the words "such materials" in clause 4 refer not to the "materials depicting and/or describing child pornography and/or simulated child pornography" referenced in the immediately preceding clause (clause 3) but call back to the much broader list contained in clause 1. JA 56 (quotation marks omitted). We are unpersuaded. Cohen's interpretation would render clause 2 superfluous and ignores the fact that the word "materials" appears only in two places: clause 3 (which lists certain "materials") and clause 4 (which references "such materials"). We decline to adopt such an unnatural and stilted reading.

---

[4] Because we sustain Cohen's claim that clause 1 is overly broad, we need not reach his separate (and forfeited) argument that the same clause is unconstitutionally vague.

IV.

Finally, we address Cohen's arguments—raised for the first time before this Court—about the length of his supervision and the district court's explanation of Cohen's special conditions. We reject both.

Cohen's challenge to the length of his supervision faces an uphill battle, both because he forfeited his objection in district court and because we "will affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable." *United States v. Webb*, 738 F.3d 638, 640 (4th Cir. 2013) (quotation marks omitted).[5] Cohen fails to establish the length of his supervision is procedurally or substantively unreasonable, much less plainly so.

As a procedural matter, the district court explained its sentence by reference to applicable Section 3553(a) factors such as deterrence and Cohen's need for rehabilitative and medical care. Succinct as it may have been, the district court discussed why it concluded lifetime supervision was appropriate, and a sentencing court is not obligated to "robotically tick through the § 3553(a) factors." *United States v. Helton*, 782 F.3d 148, 153 (4th Cir. 2015) (quotation marks omitted). Nor is lifetime supervision substantively unreasonable. Indeed, the Federal Sentencing Guidelines recommend lifetime supervision

---

[5] Cohen contends "[a] defendant preserves a procedural unreasonableness argument for appeal '[b]y drawing arguments from [18 U.S.C.] § 3553 for a sentence different than the one ultimately imposed.'" Cohen Reply Br. 8 (quoting *United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010)). True enough, but Cohen did not request a different sentence. Instead, the district court forecast its intention to impose time served, and Cohen expressed his relief. Nor did Cohen's argument that he did not violate his earlier supervision speak to the length of his *new* supervision imposed after revocation.

10

upon an *initial* conviction for distribution of child pornography. See 18 U.S.C. § 3583(k) (authorizing lifetime supervision for offense under Section 2252A); U.S.S.G. § 5D1.2(b)(2) (recommending lifetime supervision "[i]f the instant offense of conviction is a sex offense"). Having concluded Cohen breached the court's trust—and, in doing so, squandered the sentencing court's initial leniency on this point—it was hardly unreasonable for the district court to impose the duration of supervision the Guidelines had recommended in the first place.

Cohen's objections to the adequacy of the district court's explanation for imposing various conditions of supervised release also fail to carry the day under the plain-error standard. As this Court has repeatedly explained, "a sentencing court's duty to provide an explanation for the sentence imposed also requires that the court explain any special conditions of supervised release." *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020). And, true, other than special condition eleven (to which Cohen objected) the district court did not specifically address why it thought each individual special condition was necessary and appropriate.

Because the district court made clear from the outset it did not intend to impose a new term of incarceration, however, the court's comments at the revocation hearing can most fairly be understood as directed at the conditions of Cohen's supervision. See *McMiller*, 954 F.3d at 676–77. Those comments, in turn, reveal the district court's overarching rationale: "eliminat[ing] any potential trigger" for Cohen's recidivism, which prominently include social media and the internet. JA 45. Whether or not that limited explanation would have sufficed had Cohen preserved the issue, it prevents Cohen from

11

establishing that any error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quotation marks omitted).

*    *    *

We affirm the revocation of Cohen's supervised release and the imposition of lifetime supervision. We vacate the first clause of special condition eleven and remand for entry of a modified judgment striking that clause. We affirm the district court's judgment in all other respects and remand for further proceedings consistent with this opinion.

*SO ORDERED*