**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 23-4338**

―――――――――――

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MONTELLO MARQUETTE HOOD,

        Defendant - Appellant.

―――――――――――

Appeal from the United States District Court for the District of South Carolina, at Rock Hill.  Joseph F. Anderson, Jr., Senior District Judge.  (0:10-cr-00707-JFA-1)

―――――――――――

Submitted:  January 4, 2024                        Decided:  January 19, 2024

―――――――――――

Before WILKINSON, KING, and AGEE, Circuit Judges.

―――――――――――

Affirmed by unpublished per curiam opinion.

―――――――――――

**ON BRIEF:** Jeremy A. Thompson, Assistant Federal Public Defender, Jenny D. Smith, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Adair F. Boroughs, United States Attorney, Jonathan Scott Matthews, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

―――――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Montello Marquette Hood appeals the district court's judgment revoking his supervised release and sentencing him to time served. Finding no reversible error, we affirm.

To revoke supervised release, a district court need only find a violation of supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3). "We review a district court's factual findings underlying a revocation of supervised release for clear error and its ultimate decision to revoke a defendant's supervised release for abuse of discretion." *United States v. Cohen*, 63 F.4th 250, 254 (4th Cir.) (cleaned up), *cert. denied*, 144 S. Ct. 165 (2023). When revoking a defendant's supervised release, a district court must "adequately demonstrate for us the evidence on which it relied . . . so that we may understand its reasons for revoking supervised release." *United States v. Patterson*, 957 F.3d 426, 434 (4th Cir. 2020) (cleaned up). A district court need not issue a written decision so long as "the transcript and record compiled before the trial judge enable the reviewing court to determine the basis of the trial court's decision." *Id.* at 433 (internal quotation marks omitted).

Hood first contends that the district court's factual findings are insufficient to allow meaningful appellate review. While the court's ruling may have been imprecise, it is adequate for our consideration. We believe there are two plausible ways to interpret the district court's ruling. First, it could have considered the two assessments at Catawba Area Mental Health Center ("Catawba") to be one incident and thus was referring to that and Hood's failure to attend an appointment at Three Trees Center for Change ("Three Trees").

2

Second, the court could have discounted the Three Trees incident and thus was referring solely to the two Catawba assessments. These incidents were close in time, and all were discussed at the two hearings. And while the district court's ruling at the end of the second hearing was brief, the court was engaged throughout the two hearings, listening to Hood, responding to Hood's claims, informing Hood when the court had issues with his assertions, and attempting to accommodate Hood's legitimate concerns. Thus, we have an adequate record to review.

Relying on *Cohen*, Hood next argues that the district court erred in revoking his supervised release because he did not fail to participate in treatment and that the district court impermissibly conflated participation with perfect compliance. In *Cohen*, we held that a district court erred in finding that the defendant "violated the condition requiring him to participate in a sex offender treatment program by failing to follow the rules of that program." 63 F.4th at 254 (internal quotation marks omitted). While we recognized "that at some point noncompliance with rules may become so frequent or severe as to preclude further participation," we emphasized that "the treatment provider itself did not consider [the] rules violation to be disqualifying." *Id.* at 255.

Here, by contrast, the staff at Catawba found Hood's conduct to preclude further participation, twice instructing him to leave his initial assessment. While Hood selects portions of the record where the district court agreed with some of his concerns, it is clear by the end of the second hearing that the district court did not find Hood credible. The district court sought to mollify Hood's concern about signing Catawba's terms without reviewing them, but Hood then shifted into arguing that he did not need treatment. When

3

the district court noted Hood had shifted his position, Hood went into a lengthy discussion of his understanding of "treatment" versus "counseling."  As the parties began discussing Hood's employment, Hood made bizarre claims that he had slept with Queen Elizabeth, had smoked marijuana with President Obama, and had donated $30,000 to then-candidate Obama's campaign.  Hood then brought up concerns about transportation and giving his employer sufficient notice for his appointment at Three Trees, but he refused to commit to attending sessions when the district court tried to address these concerns.

Hood's behavior did not improve at the second hearing.  When the district court asked Hood if he admitted or denied the probation officer's allegations, Hood repeated his claims about transportation and notice at Three Trees and brought up the fact that he could not afford treatment.  The district court twice asked Hood if he would consent to treatment if the Government would pay for it, and both times Hood went into a lengthy discussion of other considerations.  After observing Hood's demeanor and listening to Hood over the course of two hearings, the district court found Hood not credible and accepted the probation officer's account that Hood refused to participate in mental health treatment at Catawba, prompting them to demand he leave, and failing to attend the session at Three Trees.  This conclusion is further supported by Hood's conduct at the hearings, as Hood repeatedly deflected and refused to agree to attend treatment whenever the district court sought to address his stated concerns.

4

Therefore, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*