**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4668**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JEREMY NICHOLAS MYNES,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, Chief District Judge.  (1:20-cr-00468-CCE-1)

Submitted:  November 9, 2023                    Decided:  January 25, 2024

Before AGEE, THACKER and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Mark A. Jones, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellant.  Sandra J. Hairston, United States Attorney, Margaret M. Reece, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jeremy Mynes pleaded guilty to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The district court sentenced Mynes to thirty years' imprisonment on the production count and a consecutive term of ten years' imprisonment on the possession count. In addition, it imposed fifteen-year terms of supervised release, to run concurrently, and set various conditions of that release. Lastly, it imposed various monetary penalties. Mynes' sentences are all within the Guidelines range and statutory requirements.

Mynes appealed, and counsel filed an *Anders*[1] brief raising several potential grounds for appeal and Mynes filed a supplemental pro se brief raising additional grounds. The Court ordered supplemental briefing on two issues: (1) whether a sufficient factual basis existed to support the production count, and (2) whether a condition of supervised release restricting Mynes' computer and internet use was overbroad.

For the reasons provided below, we affirm Mynes' convictions and sentences.

I.

In mid-2020, Mynes came to the attention of law enforcement after they connected him to a Dropbox, Inc., account containing uploaded files depicting "child pornography." Law enforcement obtained a warrant permitting them to search (among other items)

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

Mynes' residence, computer, electronic storage devices, and cell phones. The search of his computer, hard drives, and cell phones found scores of photographs and videos depicting child pornography. In addition, Mynes' cell phones contained dozens of images that Mynes had taken and which depicted the exposed genitalia of two minor females, identified here as "child victim 1" and "child victim 2."

Mynes was charged with receiving and attempting to receive child pornography, in violation of 18 U.S.C. § 2252(a)(2)(A) (Count 1); two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Counts 2 and 3); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Count 4). Each of the production counts focused on one of the child victims, meaning Count 2 was based on the images depicting child victim 1 and Count 3 was based on images depicting child victim 2.[2] The possession count (Count 4) related to images Mynes had created of child victims 1 and 2 as well as ones he possessed depicting other minors.

Mynes and the Government entered into a plea agreement in which he pleaded guilty to two of the four charged offenses, Count 2 (production of child pornography relating to child victim 1) and Count 4 (possession of child pornography depicting multiple minors, including child victims 1 and 2). In exchange, the Government agreed to dismiss Counts 1 and 3 and to move for a one-level reduction in Mynes' Guidelines offense-level calculation based on acceptance of responsibility under U.S.S.G. § 3E1.1(b).

---

[2] Mynes' brief contains arguments that relate to both child victims when discussing his Count 2 conviction, but we have limited our review of that offense to the images depicting child victim 1, consistent with the indictment.

3

At the plea hearing, Mynes affirmed that he'd reviewed the factual basis for his plea and had no objection to it. Following the Rule 11 colloquy, the district court accepted Mynes' guilty plea.

The sentencing hearing went similarly smoothly, with neither party noting objections to the presentence report (PSR). Once again, Mynes affirmed that he'd reviewed the PSR's contents, understood it, and had no concerns to raise to the court. The district court calculated Mynes' total offense level to be forty-three. When coupled with his criminal history category of one, Mynes' Guidelines range was set at 480 months' imprisonment (the statutory maximum).

After hearing from the parties and Mynes personally on the question of an appropriate sentence under the 18 U.S.C. § 3553(a) factors, the district court sentenced Mynes to thirty years' imprisonment on the production count and to ten years' imprisonment on the possession count, to run consecutively. In so doing, it recounted several mitigating factors that it believed had been adequately "taken into account in the charging decisions and the plea agreement," because had Mynes been "convicted of all of the things that he actually did," he would be facing a much higher sentence. J.A. 100. The court concluded that the Guidelines recommendation of the statutory maximum term of imprisonment was appropriate given the seriousness of the offenses, which involved "repeated occurrences over time, long term involvement in viewing and collecting child pornography," followed by Mynes' decision to create child pornography depicting "more than one victim" and (as to some images of child victim 2) documenting "touching" and "sexual assault." J.A. 100–01.

4

The district court then imposed a fifteen-year term of supervised release as well as numerous conditions of release. Some of the conditions were mandatory and some were standing or special conditions recommended in the PSR based on the nature of Mynes' offenses. Noting that the conditions had been set out in the PSR for Mynes' prior review, the district court obtained Mynes' consent to summarize and incorporate them by reference rather than reading them aloud in open court in detail. Particularly relevant here, the court imposed a condition that would include "[s]ignificant limits on [Mynes'] possession or use of a computer and internet." J.A. 105. The court acknowledged that technology would change by the time Mynes would be released and therefore "you pretty much need the internet to function in society, so I would anticipate appropriate allowing [him] to have some access under whatever conditions exist when he is released," but only as monitored and permitted by a probation officer. J.A. 105.[3]

---

[3] The written judgment expresses this computer and internet restriction as follows:

The defendant shall not possess or use a computer, or any other means to access any 'on-line computer service' at any location (including employment) without the prior approval of the probation officer. This includes any Internet Service Provider, peer-to-peer network or file sharing programs, or any other public or private computer network. If granted access to an 'on-line computer service,' the defendant shall consent to the probation officer conducting periodic or unannounced examinations of any internet capable devices, similar electronic devices, or computer equipment, which may include hardware, software, and related computer peripherals. This may also include the removal of such equipment, when necessary, for the purpose of conducting a more thorough examination. The defendant shall not have any social networking accounts without the approval of the probation officer.

J.A. 115.

Lastly, the district court imposed several monetary penalties, as authorized by Congress to help victims of child pornography. These included, consistent with the parties' stipulation, $3,000 in restitution to the victim "Tara" because Mynes had possessed and received files depicting her. In addition, consistent with the PSR's recommendation, the court ordered Mynes to pay a $17,000 special assessment under 18 U.S.C. § 2259A.

Mynes noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

Counsel initially filed an *Anders* brief, which required us to review the entire record for potentially meritorious issues for review. Our review spurred us to direct the parties to file supplemental briefs on the sufficiency of the factual basis to support the guilty plea as to Count 2 and the potential overbreadth of the special condition of supervised release relating to Mynes' computer and internet access.

Because Mynes did not challenge either issue in the district court, we review each for plain error. *United States v. Mastrapa*, 509 F.3d 652, 657 (4th Cir. 2007). Under the Supreme Court's familiar recitation of this standard in *United States v. Olano*, 507 U.S. 725 (1993), to prevail, a defendant must establish (1) error; (2) that is "clear" or "obvious"; and (3) that implicates the defendant's "substantial rights," meaning that it "affected the outcome of the district court proceedings," *id.* at 732, 734 (cleaned up); *see also* Fed. R. Crim. P. 52(b). Even when the first three requirements are met, then the Court still has discretion whether to remedy the error, considering whether it "seriously affects the

6

fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (cleaned up).

## A.

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). This process "ensures that the court make[s] clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991). In undertaking that duty, the district court can consider the Rule 11 plea colloquy and anything else in the record, including the stipulated facts and the PSR. *See id.* On appeal, this Court can similarly examine the entire district court record to confirm that "the district court could reasonably have determined that there was a sufficient factual basis based on the record before it," regardless of the specific findings the court made or the more limited contents of the written factual basis for a plea. *Mastrapa*, 509 F.3d at 660.

Count 2 charged Mynes with violating § 2251(a), which prohibits individuals from using "any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." Most of the elements warrant little discussion—it's undisputed that Mynes took images depicting a minor female.

Our review of the record also confirms that those images depict "sexually explicit conduct." This phrase is defined in 18 U.S.C. § 2256(2)(A), though just one of its definitions applies here—"the lascivious exhibition of the anus, genitals, or pubic area of any person." No federal statute defines "lascivious exhibition," so courts have taken

various approaches to doing so. In *United States v. Courtade*, 929 F.3d 186 (4th Cir. 2019), we adopted a definition using the dictionary definitions of the component words, concluding that a "lascivious exhibition" is "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *Id.* at 192 (citation omitted). In *Courtade* and elsewhere, we have also cautioned that "the statute by its terms requires more than mere nudity, because the phrase 'exhibition of the genitals or pubic area' is qualified by the word 'lascivious.'" *Id.* at 191 (cleaned up); *accord United States v. Cohen*, 63 F.4th 250, 256 (4th Cir. 2023) ("We agree it would be legal error to" "conclud[e] the pictures at issue were lascivious based solely on the fact that they contain an erect penis."). Of final relevance to our review, we are not the only jurisdiction to recognize that the context in which the visual depictions were taken is often a relevant factor when determining whether they constitute a "lascivious exhibition." *Cohen*, 63 F.4th at 256; *United States v. Kolhoff*, No. 22-4601, 2023 WL 6442529, at *2 (4th Cir. Oct. 3, 2023) (per curiam) (listing cases); *United States v. Heinrich*, 57 F.4th 154, 161 (3d Cir. 2023) (observing that "the ultimate inquiry is holistic" and that the minor's age and circumstances surrounding the taking of the photograph help distinguish "innocent beach or bathtub photos from child porn"); *United States v. Spoor*, 904 F.3d 141, 149 (2d Cir. 2018) (concluding that a jury could find the element satisfied based on features in the images suggesting they "serve[d] no obvious purpose other than to present the child as a sexual object").

Applying these principles to the images of child victim 1 at issue in Count 2, we readily conclude that the district court did not commit plain error in finding that the images

8

depict a "lascivious exhibition" of child victim 1's genitals and pubic area. *See, e.g.*, *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013) (stating that plain error occurs when "the settled law of the Supreme Court or this circuit establishes that an error has occurred" and that "a district court does not commit plain error by following the reasoning of another circuit" (citation omitted)). Here, Mynes took a series of images in his living room when child victim 1 was seven years old. She is sitting "on a couch without any underwear" and the images were "focused on her vagina, which was fully exposed." J.A. 129. The series as a whole reflects not just a decision to focus the images on child victim 1's genitals, but to obtain "close-up shot[s] of the girl's genitals" in the later image. J.A. 32. Although the girl was at Mynes' residence with her mother's permission, her mother was unaware that these photographs had been taken. The individual images, the series as a whole, the environment in which they were taken, and the general context, taken together, sufficiently support the factual basis for Mynes' plea so that we can affirm on plain-error review.[4]

Mynes also challenges the sufficiency of the factual basis to support a finding that he possessed the specific intent to take the images at issue in Count 2. In *United States v.*

---

[4] Many courts have relied on some variation of a six-factor test first set out in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), to assist with analyzing whether a visual depiction constitutes "lascivious exhibition." In their briefs, the parties orient their arguments around these factors. We have not yet opined on the utility of these factors, nor need we do so here. Even in jurisdictions that rely on them, the *Dost* factors are neither exhaustive nor mandatory, and whatever utility they provide in appropriate cases, we need not delve into them here because the images in the record plainly satisfy the definition supplied in *Courtade*. *See* 929 F.3d at 192 (concluding it was unnecessary to consider the relevance of the *Dost* factors or undertake that analysis based on the images clearly falling within the definition supplied).

9

*Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015), the Court recognized that § 2251 "contains a specific intent element" requiring that "*a* purpose" for taking the images was the "production of a visual depiction," *id.* at 130 (emphasis added). Intent can be shown through circumstantial evidence. *Id.* at 131. The cases in which we have concluded that the evidence did not support this element have typically been where the circumstances surrounding the taking of the images showed that the defendant acted unthinkingly or spontaneously during the course of unlawful sexual activity with a minor. *See id.* at 132–33; *see also United States v. McCauley*, 983 F.3d 690, 696 (4th Cir. 2020) (observing that "§ 2251(a) does not criminalize a spontaneous decision to create a visual depiction in the middle of sexual activity without some sufficient pause or other evidence to demonstrate that the production of child pornography was at least a significant purpose" for taking the image). Those cases are readily distinguishable from the record in this case, which reflects that Mynes intentionally took photographs of child victim 1's exposed genitalia, focused and closed-in on that part of her body for later images, and retained them on his phone. A reasonable inference from this record is that at least one purpose for his conduct was to produce the images, thus demonstrating his intent.

For all these reasons, the district court did not err—let alone commit plain error—in accepting the plea as to Count II. We therefore affirm the conviction.

B.

Next we consider the special condition of supervised release relating to Mynes' computer and internet access, and we conclude that the district court did not plainly err in imposing this comprehensive of a restriction. This issue implicates the district court's broad

10

sentencing discretion to "impose any . . . condition it considers to be appropriate, as long as that condition is 'reasonably related' to [the] statutory factors referred to in § 3583(d)(1)." *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). The statutory factors are: "the nature and circumstances of the offenses and the history and characteristics of the defendant; providing adequate deterrence; protecting the public from further crimes; and providing the defendant with training, medical care, or treatment." *Id.* (citations omitted). In addition, conditions must "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve those goals, and they must be consistent with the Sentencing Commission policy statements about supervised release. 18 U.S.C. § 3583(d)(2)–(3).

Recognizing that a restriction on computer and internet access imposes a significant burden in modern life, we have reviewed such conditions carefully, but have approved of them when coupled with an adequate explanation in appropriate cases. *E.g.*, *United States v. Arce*, 49 F.4th 382, 396 (4th Cir. 2022); *United States v. Hamilton*, 986 F.3d 413, 421 (4th Cir. 2021); *United States v. Ellis*, 984 F.3d 1092, 1104–05 (4th Cir. 2021). Applying the precepts from our past cases to this one reveals multiple reasons why the district court did not plainly err in imposing the condition at issue. At the outset, and contrary to Mynes' representation, the conditions do not impose a lifetime ban, but rather accompany his fifteen-year term of supervised release, so their duration is limited. More importantly, Mynes did more than possess child pornography; he produced it. Although we have recognized that a computer and internet ban "is almost always excessive for non-contact child pornography activity, or similar conduct where there was no actual contact with the

11

victim," *Arce*, 49 F.4th at 396 (cleaned up), we have recognized that such a condition "may be appropriate" in the event of a contact-based offense, *United States v. Morris*, 37 F.4th 971, 977 (4th Cir. 2022). Here, Mynes' offense conduct reflects that he escalated from accessing child pornography online to creating his own visual depictions of child pornography, including documentation of sexual contact with a minor. Specifically, the images Mynes took and retained of child victim 2 depict physical contact between his penis and the victim's exposed genitalia. Mynes' computer use and internet access fueled his behavior and endangered children, thus creating the appropriate individualized circumstances supporting the special condition. Further, the text of the condition avoids the parade of horribles that Mynes forecasts, allowing for access with appropriate monitoring and limitations. Given the totality of the record, we discern no plain error in the district court's decision.

### III.

Having performed our review under *Anders*, we find no meritorious issues on appeal and therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.[5]

*AFFIRMED*

---

[5] Pending before the Court is Mynes' post-argument pro se motion to file a supplemental brief in support of his appeal. Considering the totality of the circumstances, we grant his motion.