**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4134

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MAURICE SYLVESTER BAILEY,

Defendant - Appellant.

Appeal from the United States District Court for the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:20-cr-00020-NCT-1)

Argued:  April 13, 2023                    Decided:  July 17, 2023

Before DIAZ, Chief Judge, and GREGORY and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Chief Judge Diaz and Judge Thacker joined.

**ARGUED:**  Thomas Kieran Maher, AMOS TYNDALL PLLC, Carrboro, North Carolina, for Appellant.  Craig Matthew Principe, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.  **ON BRIEF:**  Amos G. Tyndall, AMOS TYNDALL PLLC, Carrboro, North Carolina, for Appellant.  Sandra J. Hairston, United States Attorney, Terry M. Meinecke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

GREGORY, Circuit Judge:

On September 24, 2019, shortly after witnessing Manley Johnson leave Appellant Maurice Bailey's home, Kannapolis, North Carolina police officer Jeremy Page discovered 0.1 grams of cocaine base during a search of Johnson's vehicle. Officer Page then confronted Bailey about the cocaine sale and instructed him to turn over any drugs still in his possession. In return, Officer Page assured Bailey that he was "going to take it and . . . leave," and everything would still be "squared away." J.A. 112. As he later testified, Officer Page expected that Bailey would assist him in future investigations. Prompted by Officer Page's offer, Bailey handed over 0.7 grams of cocaine base.

In the following weeks, Bailey helped Officer Page locate and arrest an individual for whom the police had an outstanding warrant but did not otherwise aid in Officer Page's investigations. Then, on November 7, 2019, Officer Page obtained two warrants for Bailey's arrest: one for the 0.1 grams Bailey sold to Johnson on September 24, and one for the 0.7 grams Bailey turned over that same day. In the process of executing those warrants, Kannapolis police discovered 17.8 grams of cocaine base on Bailey's person, which led to Bailey's prosecution for possession with intent to distribute cocaine.

Bailey unsuccessfully moved to suppress the 17.8 grams of cocaine and was convicted of the charge. On appeal, Bailey argues that the district court should have granted his suppression motion because his arrest constituted a breach of Officer Page's September 24 promise that all would be "squared away." Because the district court failed to make the factual findings necessary to resolve this argument, we vacate its decision

2

denying Bailey's motion to suppress and the judgment of conviction and remand for proceedings consistent with this opinion.

## I.

On August 30, 2019, Kannapolis police officers, including Officer Page, executed a search warrant at Maurice Bailey's residence. The officers found a small bag of cocaine base on the floor of Bailey's bedroom, which Bailey's girlfriend, Mecca Barber, claimed belonged to her. Bailey expressed interest in providing information to the police in exchange for leniency for Barber, and Bailey and Officer Page exchanged phone numbers.

About a month later, on September 24, 2019, Officer Page saw an individual named Manley Johnson leaving Bailey's home in a vehicle. Because he knew that Johnson had a suspended license, Officer Page followed Johnson, pulled him over, and conducted a dog sniff of the exterior of Johnson's vehicle. The dog alerted to the presence of a controlled substance, at which point Officer Page searched the vehicle and found 0.1 grams of cocaine base. After the search, Officer Page sent Bailey a text message asking to speak with him and drove back to Bailey's residence.

Bailey came out to speak with Officer Page on his front porch.[1] According to Officer Page, after confronting Bailey about the sale of cocaine to Johnson, Bailey "basically acknowledged the fact of conducting the sale, because [Bailey] said you saw

---

[1] This interaction was recorded by a body camera. However, the body camera footage is not included in the Joint Appendix. Therefore, we rely on the district court's recitation of this interaction, as well as Officer Page's testimony at the July 6, 2020, suppression hearing.

what kind it was, and [Officer Page] referred to it as shit crack, and [Bailey] said, [y]es." J.A. 40. Bailey then expressed to Officer Page that he sold the drugs because he had been having trouble securing employment and was experiencing financial hardship. Bailey asked Officer Page if he could help find him employment, and the following interaction ensued:

> Officer Page[]: Whatever little bit of shit crack you got left in that house, put it in that chair (pointing to a chair on the porch). I'm going to take it and I'm going to leave, and same thing as last. Everything is still squared away, and we'll talk. We'll put something together, and that's my word man-to-man, and I will, as soon as I get back to the PD, I'll call my people that can hook people up with jobs, and we'll find something.
>
> Bailey[]: All right. I have some dust. I have some shake, that's all I got. I can go ahead and get it right now. That's why I – look like it was shit[].
>
> Officer Page[]: Go grab the bag of shake and bring it here, whatever it is. I'm going to take you at your word that what you are grabbing is all that is in there.
>
> Bailey[]: Yeah. I ain't going to lie to you. Come on, Page.

J.A. 112–13. Officer Page then followed Bailey inside Bailey's home, where Barber was also present. Once inside, Bailey asked Barber what she did with the drugs, and Barber handed a bag to Bailey, who then turned the bag over to Officer Page. The bag contained approximately 0.7 grams of cocaine base.

Officer Page and Bailey then walked back out to the front porch, at which point Officer Page told Bailey that he "would take the crack and as soon as he got back to the station would call his people about a [commercial driving] job and that everything 'was still square' between them, but Bailey would have to get straight on this at some point in time to make it right." J.A. 113.

4

In the time following this encounter, Officer Page sent Bailey employment information, and Bailey helped Officer Page locate and arrest a man for whom the police had an outstanding arrest warrant. Then, on November 7, 2019, Officer Page obtained two warrants for Bailey's arrest. The first charged Bailey with possession with intent to sell and deliver cocaine and sell cocaine, relating to the sale of 0.1 grams to Johnson on September 24. The second warrant charged Bailey with possession with intent to sell and deliver cocaine, relating to the 0.7 grams that Officer Page received from Bailey's residence that same day. On November 13, 2019, pursuant to those warrants, Kannapolis police officers J.J. Snyder and Cody Franklin arrested Bailey at his residence. While carrying out the arrest, the officers recovered 17.8 grams of cocaine base from Bailey's pocket.

## II.

Based on the 17.8 grams of cocaine recovered pursuant to the November 13 arrest, a federal grand jury indicted Bailey on one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Bailey filed a motion to suppress the evidence of the cocaine on the ground that Officer Page wrongfully entered his home on September 24 and, therefore, the arrest warrant based on the recovery of the 0.7 grams of cocaine therein was invalid. The government opposed Bailey's motion to suppress because, in its view, Bailey consented to Officer Page's entry into his home.

On July 6, 2020, the district court held a suppression hearing, during which Officer Page testified to the events of August 30 and September 24, 2019. When the district court pressed Officer Page about what he and Bailey discussed after Bailey handed over the 0.7 grams of

5

cocaine on September 24, Officer Page recounted that the conversation was about Bailey "providing information to assist [the police] in further investigations or other investigations to basically help himself out of the crack cocaine that was seized from Mr. Johnson" and "the additional crack cocaine that was found in his house that he voluntarily surrendered to [Officer Page] on that day." J.A. 49. He further testified that he intended to give Bailey "an opportunity to help himself out, whether it would benefit him by giving him credit with the [district attorney's] office if he was to be charged, or depending on the . . . level of information that he provided, could have possibly been where he may not have been charged in the future." J.A. 67.

Officer Page explained that he drew up the November 7 arrest warrants against Bailey because Bailey never "provide[d] the assistance that [Officer Page] w[as] expecting him to." J.A. 53. According to Officer Page, he waited until that date to obtain the warrants because he "was trying to give Mr. Bailey ample time to provide any type of substantial assistance to the VICE narcotic unit." *Id.* While Officer Page admitted that Bailey did help the police arrest Steven Mason, an individual for whom the police had an outstanding arrest warrant, he did not consider that assistance substantial. Officer Page also testified that, during his September 24 encounter with Bailey, he did not tell Bailey about the level of cooperation expected from him. He stated, however, that a week or two after that encounter, "Bailey had mentioned some names of people that were involved in drug activity that he would help with," and Officer Page told Bailey "that those would be extremely beneficial in helping [Bailey] in his current situation." J.A. 71.

At the close of evidence, the district court indicated skepticism toward Bailey's argument that Officer Page unlawfully entered his home on September 24, but it expressed

6

concern about Officer Page's statement instructing Bailey to, in the district court's words, "put [the drugs] here and we're square." J.A. 77. The court interpreted Officer Page's "squared away" statement as meaning: "I'm not going to do anything. Give it here and you got immunity, zero for it," *id.*, and expressed doubt that an officer "can lie for the purpose of officiating the obtaining of a warrant with a showing of probable cause," J.A. 87. Accordingly, the district court allowed additional briefing on the propriety of Officer Page's statement, which led to his discovery of the 0.7 grams of cocaine, and on whether the separate warrant based on the 0.1 grams of cocaine was sufficient to support the November 13 arrest.

In his supplemental brief, Bailey argued that by instructing him to hand over his drugs and assuring him that "[e]verything is still squared away," J.A. 112, "Officer Page promised not to charge [Bailey] with the offense if . . . he assisted law enforcement," J.A. 138–39. Bailey further contended that this promise extended to both the 0.7 grams of cocaine that he turned over to Officer Page in reliance on this statement, as well as the 0.1 grams of cocaine found on Johnson (which had prompted Officer Page's visit to Bailey's residence). In Bailey's view, he upheld his end of the agreement by helping the police apprehend Mason, and Officer Page breached the agreement by later obtaining the arrest warrants—thereby rendering the November 13 arrest illegal and requiring the suppression of the 17.8 grams of cocaine discovered incident to the arrest.

In response, the government argued that it was *Bailey* who breached what it described as an "informal nonprosecution agreement" by failing to sufficiently cooperate with Officer Page. J.A. 107. Additionally, the government asserted that even if Officer Page breached that agreement with Bailey, Bailey's only remedy would be to suppress the

7

0.7 grams of cocaine; the arrest warrant for the 0.1 grams of cocaine found on Johnson remained valid and provided independent support for the November 13 arrest.

The district court denied Bailey's motion to suppress. As relevant here, the court determined that, prior to making the statement that everything would be "squared away," Officer Page had independent probable cause supporting an arrest warrant based on Bailey's alleged sale of 0.1 grams of cocaine to Johnson.[2] The court therefore declined to assess whether Officer Page had made or breached an agreement with Bailey by obtaining the arrest warrants because, even if his "squared away" statement "was an offer which was breached, the remedy would be to strike or suppress whatever amount of crack was turned over in response to the offer having been made, i.e., . . . the [0].7 gram of crack handed over by Mr. Bailey," the associated arrest warrant, "and any statements made by Bailey after the offer." J.A. 114. Because the November 13 arrest was independently supported by the arrest warrant for the 0.1 grams of cocaine, the district court held that the arrest and consequent search stood on firm ground.

Bailey subsequently entered a conditional guilty plea which reserved his right to appeal the denial of his suppression motion. On February 18, 2022, the district court sentenced Bailey to seventy months' imprisonment. This appeal followed.

---

[2] According to the district court, Officer Page had probable cause because he knew that Johnson had just left Bailey's house at the time of the traffic stop and, when Officer Page confronted Bailey about this sale, Bailey appeared to acknowledge that he sold Johnson the drugs. The parties do not contest this point, so we do not address it.

III.

"In reviewing the denial of a motion to suppress, 'we review legal conclusions de novo and factual findings for clear error.'" *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (quoting *United States v. Seerden*, 916 F.3d 360, 365 (4th Cir. 2019)).  When, as here, "a suppression motion has been denied, this Court reviews the evidence in the light most favorable to the government." *United States v. Abdallah*, 911 F.3d 201, 209 (4th Cir. 2018) (quoting *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013)).

IV.

Kannapolis police officers arrested Bailey on November 13 pursuant to two separate arrest warrants:  one warrant for Bailey's alleged sale of 0.1 grams of cocaine to Johnson on September 24, and one warrant for the 0.7 grams of cocaine that Bailey turned over to Officer Page on that same day.  The district court denied Bailey's motion to suppress because, before telling Bailey to hand over his drugs and everything would still be "squared away," Officer Page had probable cause supporting an arrest warrant for the 0.1 grams of cocaine found on Johnson.  In other words, the police were free to arrest Bailey for the 0.1 grams of cocaine regardless of any promises Officer Page might have made after he gained probable cause for that arrest.  Bailey argues, and we agree, that this analysis was in error.

A.

As an initial matter, we must determine the legal framework that governs Bailey's claim.  Because Bailey's suppression motion pertains to the government's recovery of various quantities of drugs, it might appear at first glance that a traditional Fourth

Amendment framework applies. If that were the case, perhaps we would agree with the district court that Bailey's sole remedy is the suppression of the 0.7 grams of cocaine and the associated arrest warrant. That is, even if Officer Page's statement leading to his discovery of the 0.7 grams of cocaine constituted an unlawful search or seizure under the Fourth Amendment, Officer Page nevertheless gained probable cause for the arrest warrant for the 0.1 grams of cocaine "by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). Pursuant to the "independent source doctrine," that warrant—which alone could support Bailey's November 13 arrest and search—would thus be admissible.

Bailey, however, does not allege a violation of his Fourth Amendment rights. Rather, he argues that his November 13 arrest violated his due process rights because, by obtaining the relevant arrest warrants, Officer Page breached a promise not to arrest Bailey for either the 0.7 grams of cocaine Bailey turned over *or* the 0.1 grams of cocaine found on Johnson.[3] For guidance on how to assess this argument, we turn to cases that have considered analogous promises by the government.

---

[3] As discussed below, the parties dispute what, if anything, Officer Page promised Bailey by making the "squared away" statement. But they appear to agree that any such promise would have extended to both the 0.1 grams of cocaine Officer Page had already discovered and the 0.7 grams of cocaine Bailey later turned over. Oral Argument at 27:17–30:41; Opening Br. at 9. That conclusion is supported by Officer Page's testimony at the suppression hearing that, by making this statement, he was giving Bailey the opportunity to "basically help himself out of the crack cocaine that was seized from Mr. Johnson . . . and the additional crack cocaine that was found in his house that he voluntarily surrendered to [Officer Page] on that day." J.A. 49.

10

To start, in *United States v. Carter*, the "defendant alleged that he incriminated himself and others and pleaded guilty to a misdemeanor charge" based on a prosecutor's oral promise "that, except for the charge to which he pleaded guilty, [he] would not be prosecuted for commission of the crimes he divulged." 454 F.2d 426, 427 (4th Cir. 1972). The defendant further alleged that he "fully performed his part of the bargain," but was later indicted on additional counts in violation of the prosecutor's promise. *Id.* The defendant moved to dismiss the indictment, and the district court denied his motion without an evidentiary hearing. *Id.* at 426. We vacated and remanded for the district court to conduct an "evidentiary hearing to determine if a promise was made and, if so, by whom and of what scope." *Id.* at 427. Critically, we explained that "if the promise was made to defendant as alleged and defendant relied upon it in incriminating himself and others, the government should be held to abide by its terms." *Id.* at 427–28. We noted that this conclusion was consistent with *Santobello v. New York*, which similarly held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. 256, 262 (1971).

*Carter* thus stands for the proposition that if the government "utilize[s] its discretion to strike bargains with potential defendants," those bargains can be enforced against the government. *Carter*, 454 F.2d at 428 (citation omitted). And while *Carter* concerned a plea agreement, we have since recognized that a non-prosecution agreement "invokes the same constitutional due process concerns as a plea agreement." *United States v. Gerant*, 995 F.2d 505, 508 (4th Cir. 1993). We have also noted that, when certain conditions are

11

met, "courts may enforce informal grants of transactional immunity." *United States v. McHan*, 101 F.3d 1027, 1034 (4th Cir. 1996) (citation omitted), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017).

It therefore makes sense that our sister circuits have enforced non-prosecution agreements like the one discussed in *Gerant* against the government. For example, in *United States v. Carrillo*, the defendant was arrested with heroin in his possession, and Drug Enforcement Administration agents offered not to prosecute him if he cooperated in their investigation of certain suspected drug traffickers. 709 F.2d 35, 35–36 (9th Cir. 1983). The government later indicted the defendant "on the ground that he had breached the cooperation agreement," and the district court granted the defendant's motion to dismiss the indictment. *Id.* at 36–37. The Ninth Circuit affirmed because it determined that the defendant fulfilled his "obligations under the agreement" and, "under settled notions of fundamental fairness[,] the government was bound to uphold its end of the bargain." *Id.* Similarly, in *United States v. Rodman*, the First Circuit upheld the district court's dismissal of an "indictment on the grounds that the Securities and Exchange Commission had obtained substantial information . . . from the appellee on the basis of a promise that the [SEC] would strongly recommend to the United States Attorney that no prosecution against the appellee be undertaken." 519 F.2d 1058, 1059–60 (1st Cir. 1975). Like the Ninth Circuit, the First Circuit affirmed the "district court's view that the unfairness to the [defendant] warranted dismissal of the indictment." *Id.*

In those cases, as here, the fact that the government may have learned of a defendant's wrongdoing prior to making an agreement does not place the government's

12

promise of leniency beyond the scope of the agreement. Quite the opposite, it is the government's knowledge of wrongdoing that so often serves as consideration for such agreements. As a result, the government's promise not to act on that knowledge cannot be deemed categorically unenforceable. So, while the proper remedy for a breached agreement will vary on a case-by-case basis, enforcement of the agreement is one remedy the district court has in its relief-fashioning arsenal. *See United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir. 1991); *Carrillo*, 709 F.2d at 37.

The government does not—because it cannot—dispute that general principle. It argues, however, that the agreement here is not enforceable against the government because Officer Page lacked the authority to make it. In mounting this argument, the government relies primarily on a North Carolina Court of Appeals case, *State v. Sturgill*, 469 S.E.2d 557 (N.C. Ct. App. 1996). In *Sturgill*, a police officer promised a "defendant that he would not be prosecuted as a habitual felon" in exchange for cooperation. *Id.* at 558. However, after the defendant provided self-incriminating information pursuant to that promise, the State indicted him as a habitual felon and used his statements against him at trial. *Id.* The North Carolina Court of Appeals declined to order specific performance of the promise (which would have meant quashing the indictment) but granted the defendant "a new trial on all charges" and the suppression of his "confession and evidence arising therefrom." *Id.* at 569. Although the court noted that the officer lacked authority to make the non-prosecution agreement, it still found that the "broken promise[]" could "mandate relief by [its] courts." *Id.* at 563. "The appropriate consideration," it reasoned, "is not the power of the police to bind the office of a North Carolina district attorney, but rather the

13

scope of a defendant's due process right to enforce a governmental promise not to use evidence against him, upon which he detrimentally relied in furnishing incriminating evidence to police." *Id.* (cleaned up).

In the government's view, this case stands for the proposition that where an officer makes an unauthorized non-prosecution promise which is then breached, the defendant's only remedy is the suppression of any evidence that was obtained in detrimental reliance on that promise. It is not clear that *Sturgill* so held given its express statement that it "do[es] not mean to imply that specific performance will never be available when police promises result in detrimental reliance by a defendant inducing relinquishment of constitutional rights." *Id.* at 568. But even assuming it did, the government's argument fails because Bailey does not allege that Officer Page promised not to *prosecute* him. Rather, Bailey alleges that Officer Page promised not to *arrest* him, which nobody disputes was within his authority as a police officer.[4]

Finding the government's argument unpersuasive, we conclude that if Officer Page did breach a promise not to arrest Bailey for either quantity of drugs recovered on September 24 in exchange for his cooperation, Bailey could seek to enforce that promise against the government. To be sure, *Carter* and its progeny do not address the precise

---

[4] For this reason, the other cases which the government cites for the proposition that an "agreement is only enforceable against the United States if it was entered into by a party acting with the authority to bind the United States Attorney to a non-prosecution promise" are similarly inapposite. Response Br. at 12 (citing *United States v. Flemmi*, 225 F.3d 78, 87 (1st Cir. 2000), *United States v. Miller*, No. 5-14-CR-19-01, 2014 WL 4102379, at *9 (N.D. W.Va. Aug. 18, 2014), and *United States v. Juvenile Male*, No. 88-5575, 1988 WL 138688, at *2 (4th Cir. 1988) (unpublished)).

promise Bailey alleges occurred here:  a promise not to arrest.  Yet we see no reason to treat a non-arrest agreement any differently than the non-prosecution and plea agreements we have previously held enforceable against the government.  In non-arrest agreements, as in non-prosecution and plea agreements, the government wields its vested authority to extract cooperation from a potential defendant in exchange for a promise of leniency.  A police officer is not entitled to arbitrarily breach these agreements, which have become a central feature of the many drug-related prosecutions that occupy our criminal legal system each year.  *See* Alexandra Natapoff, *Snitching:  The Institutional and Communal Consequences*, 73 U. Cin. L. Rev. 645 (2004).  In all such contexts, therefore, where an individual fulfills his obligations under the agreement, "settled notions of fundamental fairness" may require the government "to uphold its end of the bargain," too.  *Carrillo*, 709 F.2d at 37.  To hold otherwise would rubberstamp a police practice that stands to undermine "the honor of the government" and "public confidence in the fair administration of justice." *Carter*, 454 F.3d at 428.

## B.

Having determined that Bailey's allegations, if true, could warrant enforcing the alleged non-arrest agreement against the government, we are left with the salient question of whether Officer Page did, in fact, breach such an agreement.  The district court left this question open, and the parties contest the answer.  Specifically, they dispute whether there was an agreement, and, if there was, its terms and whether Bailey first breached it by failing to provide sufficient cooperation.  We decline to address these arguments because where, as here, "an appellate court discerns that a district court has failed to make a finding because

of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982). And while we may make a finding of fact in the first instance "where a thorough review of the record permits only one resolution of the factual issue," *Patterson v. Greenwood Sch. Dist. 50*, 696 F.2d 293, 295 (4th Cir. 1982), the ambiguities in this record preclude us from resolving the factual issues at this juncture.

We therefore remand to the district court to determine in the first instance whether the non-arrest "promise was made, relied upon and breached as alleged." *Carter*, 454 F.2d at 428. If the district court determines Officer Page did breach such an agreement, it should also "determine whether specific performance" or "other equitable relief" is appropriate to remedy that breach. *Conner*, 930 F.2d at 1076; *see also Carrillo*, 709 F.2d at 37.

V.

For the foregoing reasons, we vacate the district court's denial of Bailey's motion to suppress and the judgment of conviction and remand for proceedings consistent with this opinion.

*VACATED AND REMANDED*