**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-4150**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VINCENT DERITIS,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Kenneth D. Bell, District Judge.  (5:21-cr-00042-KDB-DSC-1)

───────────

Argued:  March 21, 2025                    Decided:  May 14, 2025

───────────

Before THACKER, QUATTLEBAUM, and RUSHING, Circuit Judges.

───────────

Affirmed in part and vacated and remanded in part by published opinion.  Judge Thacker wrote the opinion in which Judge Quattlebaum and Judge Rushing joined.

───────────

**ARGUED:**  Anne Margaret Hayes, Cary, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

───────────

THACKER, Circuit Judge:

On April 21, 2023, a jury convicted Vincent Deritis ("Appellant") of four offenses involving child sexual abuse material.[1] Count One charged Appellant with using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction in violation of 18 U.S.C. § 2251(a), based on a video that Appellant took of his minor stepdaughter while she was showering. Counts Two and Three charged Appellant with violating the same statute, based on certain photographs Appellant took of his stepdaughter while she was sleeping. And Count Four charged Appellant with possessing child sexual abuse material in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court sentenced Appellant to 600 months of imprisonment and imposed a special assessment of $117,000 pursuant to 18 U.S.C. § 2259A.

Appellant asserts a litany of arguments on appeal. First, Appellant argues that the district court erred by denying his motion to suppress evidence obtained from his Google account. Second, Appellant argues that the district court erroneously instructed the jury as to the term "lascivious exhibition," and that such instruction incurably prejudiced his trial. Third, Appellant argues that the district court erred by denying Appellant's Rule 29 motion for acquittal with respect to Counts One and Two. Fourth, Appellant argues that the district court erroneously excluded exculpatory testimony from Appellant's ex-wife. Last,

---

[1] *See United States v. Kuehner*, 126 F.4th 319, 322 n.1 (4th Cir. 2025) (referring to "child pornography" as "child sexual abuse material" to "reflect more accurately the abusive and exploitative nature of child pornography").

Appellant argues that the district court erred by imposing a special assessment without considering the applicable statutory factors.

We hold that the district court did not err in denying Appellant's motion to suppress because the Government obtained the challenged evidence from an independent source. Appellant's challenge to the district court's instruction on the definition of "lascivious exhibition" is foreclosed by our decision in *United States v. Sanders*, 107 F.4th 234 (4th Cir. 2024). The district court did not err in denying Appellant's Rule 29 motion with respect to Counts One and Two because substantial evidence supported both convictions. Moreover, any error in the district court's evidentiary ruling was harmless. Finally, we hold that the district court plainly erred by imposing a special assessment without considering the mandatory statutory factors on the record.

Therefore, as explained below, we affirm in part and vacate in part.

I.

A.

In March 2019, the Government received a cyber tip from Microsoft linking child sexual abuse material to an IP address at Appellant's residence in Hickory, North Carolina. On April 3, 2019, Hickory Police Investigator Marisa Rogers executed a search warrant at Appellant's residence, but when she knocked on Appellant's door, Appellant did not answer. Instead, Appellant began searching on the internet about how to report child sexual abuse material and erasing the data on his two hard drives. He also began running encryption software on his hard drives, which, if successful, would have made the data

permanently unrecoverable.  Investigator Rogers returned to Appellant's home later that morning, at which point she and other officers executed the search warrant.

When the officers entered Appellant's home, they saw that Appellant was running a program on his computer to attempt to permanently delete his data.  Hickory Police Analyst Mathew Rogers stopped the destruction process and copied Appellant's hard drive while "on the scene with the computer running."  J.A. 906.[2]  On Analyst Rogers' direction, the Government contemporaneously submitted a preservation request to Google pursuant to the Stored Communications Act, 18 U.S.C. § 2703(f), for Appellant's Gmail account, which was visible on his computer when the Government executed the warrant.  The preservation request asked Google to pull and hold the records associated with Appellant's Gmail account and stated that a warrant would follow "within 30 days."  J.A. 738.  The Government informed Appellant that "he might still have access to his account," but would not "be able to go in and delete stuff."  Id. at 116.

Upon completing their search of Appellant's residence, the police officers seized Appellant's computer, and his current and former cell phones.  In his review of the data on Appellant's computer, Analyst Rogers found images of Appellant's 12 year old stepdaughter naked in Appellant's bathroom.  From his professional experience, Analyst Rogers could tell that the photographs were taken from a hidden recording device.  Since no such device was recovered in the initial search of Appellant's residence, the police officers obtained another warrant to search Appellant's residence for the camera, which

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

they executed on April 4, 2018. In the course of executing the warrant, the officers asked Appellant about the image of his stepdaughter they had found on his computer. Appellant admitted that he had placed a hidden camera in his bathroom and admitted to viewing the image. With Appellant's assistance, the officers then found and seized two small cameras that were stored in a case in Appellant's office. Appellant admitted that he had previously placed one of the cameras in the master bathroom.

Appellant's ex-wife was also present at the residence when the police officers executed the warrant for Appellant's hidden camera.[3] After Investigator Rogers showed Appellant's ex-wife the image of her daughter, the two of them stepped onto the front porch. According to a subsequent police report created by Investigator Rogers, Appellant's ex-wife said that Appellant "was always telling [his stepdaughter] not to take showers in the[] [master] bathroom." J.A. 740. Appellant's ex-wife nevertheless would let the minor use the bathroom when Appellant "was not looking." *Id.* While the two of them were talking on the porch, Appellant walked from the living room to the kitchen and stabbed himself with a kitchen knife. Appellant testified at trial that he had a history of depression and suicide attempts.

Following the two searches, the Government conducted a full forensic examination of Appellant's computer. In that examination, the Government recovered a collection of "thumbnail" images -- smaller copies of larger images or frames from videos that had been

---

[3] Appellant and his then wife were married at the time of these events but divorced thereafter prior to Appellant's trial. Therefore, we refer to her throughout this opinion as Appellant's ex-wife.

5

saved to Appellant's hard drives before he erased them. Appellant's thumbnail collection contained thousands of images of child sexual abuse material that Appellant had downloaded from the internet. It also contained frames from a video Appellant had taken of his stepdaughter in October 2018 using his hidden camera.

The October 2018 video was of Appellant's stepdaughter using the shower in the master bathroom at Appellant's residence. According to the testimony elicited at trial, on October 29, 2018, Appellant's stepdaughter was staying home from school due to a teacher workday. Appellant, who worked remotely, was also at home, while Appellant's ex-wife was at her job at Lowe's. By that date, Appellant had installed a hidden camera in the master bathroom of the house. Using that camera, Appellant captured video footage of his twelve year old stepdaughter nude, entering and exiting the shower, and toweling off. According to the stills of the video tendered at trial, the images depict the minor's genitals, pubic area, and upper torso. The minor appeared to be "entirely unaware of the camera." Appellant Br. at 28. Appellant transferred the video of his stepdaughter from his camera to his computer that same day and accessed it multiple times over the subsequent six months.

On May 28, 2019, the Government obtained a warrant to search Appellant's Google account and served it on Google. Google provided two sets of data in response. The first set contained data preserved in response to the April 3, 2019 preservation request. The second set contained data "that was still associated with the account at the time the [May 28, 2019] search warrant was executed." J.A. 782. There were only "minor differences" between the two sets of data. *Id.* at 122. In the datasets, the Government found

6

photographs that Appellant had taken of his stepdaughter. Specifically, the Government found a photograph taken on Appellant's Google Pixel phone on January 19, 2019, between 2:00 and 4:00 a.m., of Appellant's stepdaughter's hand touching his penis. And the Government found another photograph, taken on March 17, 2019, of Appellant pulling his stepdaughter's shorts and underwear aside and touching her genitals with his hand. Appellant's stepdaughter was 13 years old at the time.[4]

### B.

On June 15, 2021, Appellant was indicted in the Western District of North Carolina and charged with four counts. Count One charged Appellant with using or attempting to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction in violation of 18 U.S.C. § 2251(a), based on the October 29, 2018 video of Appellant's stepdaughter in the master bathroom. Count Two alleged a violation of the same statute based on the January 2019 photograph of Appellant's stepdaughter's hand on his penis. And Count Three alleged another violation of the statute based on the March 2019 photograph of Appellant's stepdaughter's genitals. Count Four charged Appellant with possessing child sexual abuse material in violation of 18 U.S.C. § 2252A(a)(5)(B), based on the thousands of images of child sexual abuse material obtained from Appellant's computer.

---

[4] The Government executed a subsequent search warrant to seize items that appeared in the photographs, such as Appellant's clothes and his wedding band.

7

On November 24, 2021, Appellant moved the district court to suppress the information supplied to the Government by Google pursuant to the May 2019 warrant. Appellant argued that the Government effected a "warrantless seizure" by serving the April 3, 2019 preservation request. J.A. 715–17. Appellant also argued that the 55 days that passed before the officers obtained a search warrant rendered the search unreasonable pursuant to the Fourth Amendment. In response, the Government argued that the preservation request did not constitute a seizure, and that exclusion was not appropriate because the Government acted in good faith. The Government also argued that the second data set that Google provided -- the data associated with Appellant's account at the time the Government executed the May 28, 2019 search warrant on Google -- was untainted by the preservation request and provided an independent source for admitting the evidence.

Following an evidentiary hearing, the district court denied Appellant's motion. The court held that the Stored Communications Act, 18 U.S.C. § 2703(f), authorized the Government's preservation request. The court further held that the Government's preservation request did not constitute a "seizure" pursuant to the Fourth Amendment. J.A. 785 ("[S]ending a preservation request that provides the government zero information and does not affect the user's access to the information is clearly not [a seizure]."). The court then reasoned that because there was no seizure prior to the execution of the search warrant, the court did not need to "examine whether the time between 'seizure' and the warrant[] was reasonable." *Id.* at 786.

Appellant's jury trial began on June 21, 2022. In his defense, Appellant testified that he had set up the hidden camera as part of his sexual relationship with his ex-wife and

8

had only caught the videos of his stepdaughter by mistake. J.A. 1089 (Appellant testifying: "I made it specifically clear that [the minor] wasn't to use our bathroom."). Appellant denied knowledge of the photograph of his stepdaughter's hand with an adult penis, and of his stepdaughter's genitals while she was sleeping. But the Government proffered evidence identifying that it is Appellant in the pictures based on his wedding band and other distinguishing features. Appellant admitted in his direct testimony to downloading the images of child sexual abuse material found on his computer.[5]

In support of his position, Appellant sought to elicit testimony from his ex-wife on cross-examination that Appellant had forbidden his stepdaughter from using the master bathroom that contained the hidden camera. Specifically, Appellant's counsel asked Appellant's ex-wife if "there was a time when [Appellant] had told [his ex-wife] not to allow [Appellant's stepdaughter] to use that bathroom." J.A. 1059. And counsel asked Appellant's ex-wife: "Did [the minor] have permission to go into that bathroom [from Appellant]?" *Id.* The district court sustained the Government's objections because the statements were "impermissible hearsay." *Id.* at 1060.

Appellant moved for judgment of acquittal at the close of evidence, which the district court denied. Following two days of trial, the jury found Appellant guilty on all counts.

---

[5] Appellant testified that he liked to "clean up all the clutter or the trash that was on the web" in his spare time. J.A. 1099. To do that, he would "mass download," *id.*, materials from websites, review them, and then report anything "nefarious" to the website administrator, *id.* at 1105. Appellant admitted that the materials he downloaded contained "a large amount of child [sexual abuse material]." *Id.* at 1120.

C.

At sentencing, the district court "adopt[ed] the information in the [Presentence Investigation Report ("PSR")] without change." J.A. 1268. It sentenced Appellant to 600 months of imprisonment with a special assessment of $50,000 on each of Counts Two and Three, and $17,000 on Count Four pursuant to 18 U.S.C. § 2259A, for a total of $117,000. Appellant did not object to the special assessments.

Appellant timely noted his appeal.

II.

A.

We begin with Appellant's challenge to the district court's denial of his motion to suppress the evidence obtained from the search warrant issued to Google. In reviewing the denial of a motion to suppress, "we review legal conclusions de novo and factual findings for clear error." *United States v. Bailey*, 74 F.4th 151, 156 (4th Cir. 2023) (quoting *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021)). When, as here, "a suppression motion has been denied, this Court reviews the evidence in the light most favorable to the government." *Id.* (citing *United States v. Abdallah*, 911 F.3d 201, 209 (4th Cir. 2018)).

Appellant's theory is that by serving the preservation request on Google pursuant to the Stored Communications Act, 18 U.S.C. § 2703(f), the Government seized his data. And, according to Appellant, because that was a warrantless seizure, the Government's 55 day delay between seizing the data through the preservation request and obtaining the warrant was unreasonably lengthy, in violation of the Fourth Amendment.

10

As the Government notes, however, we need not reach any of these questions since the Government received an identical set of data from Google that was not the fruit of the preservation request.  As the Supreme Court has explained, the "independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Utah v. Strieff*, 579 U.S. 232, 238 (2016).  Because the officers obtained the photographs Appellant took of his stepdaughter from a separate independent source in this case, we need not inquire whether any part of the Government's search of Appellant's Gmail account was unlawful.

Appellant offers no response to this argument other than to say that the district court did not rely on this ground in its decision.[6]  This point is immaterial since "[w]e are not limited to evaluation of the grounds offered by the district court to support its decision[] but may affirm on any grounds apparent from the record." *U.S. v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005).  And the record in this appeal makes clear that this argument was in fact presented to the district court.

Accordingly, the district court's denial of Appellant's motion to suppress is affirmed.

### B.

Next, we turn to Appellant's assertion that the district court erroneously instructed the jury with respect to Counts One, Two, and Three as to the definition of "lascivious

---

[6] Therefore, we need not consider whether any exception would apply on the facts of this case.

11

exhibition." We review whether a jury instruction incorrectly stated the law de novo. *United States v. McCauley*, 983 F.3d 690, 694 (4th Cir. 2020). This review requires us to consider the jury instruction "in light of the whole record," to determine whether it "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Id.* (quoting *United States v. Miltier*, 882 F.3d 81, 89 (4th Cir. 2018)). Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction seriously prejudiced the challenging party's case. *Id.*

Counts One, Two, and Three charged Appellant with violating the same statute, 18 U.S.C. § 2251(a). Section 2251(a) criminalizes using a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct." *Id.* "[S]exually explicit conduct" is defined by 18 U.S.C. § 2256(2)(A) as "lascivious exhibition of the anus, genitals, or pubic area of any person." Appellant's challenge to the district court's instruction turns on the definition of "lascivious exhibition."

1.

At the time of Appellant's trial, we had one decision defining "lascivious exhibition" as contemplated in § 2256: *United States v. Courtade*, 929 F.3d 186, 191–92 (4th Cir. 2019), *as amended* (July 10, 2019). As we recognized in *Courtade*, defining "lascivious exhibition [was] not always easy." *Id.* at 192 (quotation marks omitted). We explained, many courts sought guidance in the six factors articulated in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). But the *Dost* factors had been "subject to criticism over the years." *Courtade*, 929 F.3d at 192. Particularly the "divisive" sixth factor, which

12

"potentially implicates subjective intent and asks whether the depiction is intended or designed to elicit a sexual response in the viewer." *Id.*

Rather than wade into this "thicket" regarding the *Dost* factors in *Courtade,* we instead interpreted "lascivious exhibition" according to its plain and unambiguous meaning as: "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *Courtade,* 929 F.3d at 192. This definition was sufficient to resolve the facts at issue in *Courtade,* where the appellant tricked his minor stepdaughter into taking a camera into a shower and directed her to hold it in a way that recorded her nude body. *Id.* at 192–93. *Courtade* explained, "the video depict[ed] not simply a young girl nude in the shower." *Id.* at 193. Rather, it showed "a young girl deceived and manipulated by an adult man into filming herself nude in the shower, and methodically directed to do so in a way that ensures she records her breasts and genitals." *Id.* (citing *United States v. Ward,* 686 F.3d 879, 883–84 (8th Cir. 2012) ("When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex." (citation omitted))).

*Courtade* held that these facts "objectively depict[ed] a 'lascivious exhibition' because the images and audio . . . make clear that the video's purpose was to excite lust or arouse sexual desire in the viewer." *Courtade,* 929 F.3d at 193. Sitting as a factfinder, the court did not need to probe the appellant's "subjective intent" or his motives. Rather, the holding followed "from the video itself, and would thus be apparent to any reasonable viewer." *Id.*

13

What *Courtade* stands for, then, is that cases where an adult obtains a video of a naked minor's genitals through manipulative means such as a hidden camera do not present a close question for finding "lascivious exhibition." Still, after *Courtade* the permissibility of using the *Dost* factors remained an open question in this circuit.

2.

The district court defined "lascivious exhibition" based on this footing. Accordingly, in the district court's instruction to the jury on Counts One, Two, and Three, the court applied *Courtade* and explained: "lascivious exhibition means a depiction that displays or brings to view to attract notice to the genitals or pubic area of children in order to excite lustfulness or sexual stimulation in the viewer." J.A. 1198 (quotation marks omitted).

Over Appellant's objection, the district court also instructed the jury that it could rely on the six *Dost* factors to make its decision. In full, the court instructed the jury as follows:

> Not every exposure of the genitals or pubic area constitutes a lascivious exhibition. In deciding whether the government has proved that a particular visual depiction constitutes a lascivious exhibition, you should consider the following factors:
>
> First, whether the focal point of the visual depiction is on the minor's genitals or pubic area;
>
> Second, whether the setting of the visual depiction makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity;
>
> Third, whether the minor is displayed in an unnatural pose or in inappropriate attire, considering the age of the minor;

14

Fourth, whether the child is fully or partially clothed or nude;

Fifth, whether the visual depiction suggests coyness or a willingness to engage in sexual activity; and

Sixth, whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

A picture or image need not involve all of these factors to be a lascivious exhibition of the genitals or pubic area. It is for you to decide the weight or lack of weight to be given to any of these factors. Ultimately, you must determine whether the visual depiction is lascivious based on the overall content.

J.A. 624–25.

Below and on appeal, Appellant argued that this jury instruction was erroneous, tracking the analysis of the D.C. Circuit in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022). There, the D.C. Circuit construed "lascivious exhibition" to mean that "the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in *any* type of sexual activity." *Id.* at 685 (emphasis in original). The D.C. Circuit reached this construction by applying a plain reading of the text of the statute, filtered through the Supreme Court's First Amendment case law addressing vagueness and overbreadth challenges to child sexual abuse material statutes. *See id.* at 681–86 (discussing *Miller v. California*, 413 U.S. 15 (1973); *New York v. Ferber*, 458 U.S. 747 (1982); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *United States v. Williams*, 553 U.S. 285 (2008)). At its core, that construction rejects the viability of the *Dost* factors as a tool for defining a "lascivious exhibition." *Hillie*, 39 F.4th at 686 ("In reaching this conclusion, we reject the [] argument . . . that 'lascivious exhibition of the

15

genitals,' as defined in § 2256(2)(A), should be construed in accordance with the so-called *Dost* factors.").

But whatever utility *Hillie*'s interpretation of "lascivious exhibition" may have held after our decision in *Courtade*, such arguments are now foreclosed in this circuit pursuant to our decision in *United States v. Sanders*, 107 F.4th 234 (4th Cir. 2024). In *Sanders*, issued several months after the completion of briefing in this appeal, we affirmed a trial court's reliance on the *Dost* factors to explain "lascivious exhibition" for a series of sexually explicit conduct charges, including a violation of § 2251(a). 107 F.4th at 263. We also put to rest any contention in this circuit about the propriety of the sixth *Dost* factor: "[the sixth factor] explicitly provides that the jury is to look at 'whether the *visual depiction* is *intended or designed* to elicit a sexual response,' not whether a sexual response was elicited [from the viewer]." *Id.* at 262 (emphasis in original). Restated, the Sixth *Dost* factor assesses whether the defendant made the visual depiction with the intent to elicit a sexual response.

In affirming the district court's instructions in *Sanders*, we established several parameters for application of the *Dost* factors. First, we emphasized that the court's lascivious exhibition instruction "did not advise the jurors that they could convict on nudity alone." *Sanders*, 107 F.4th at 262 (affirming instruction: "For the visual depiction of an exhibition of the genitals . . . to be considered sexually explicit conduct, the exhibition must be lascivious."). Rather, we noted, the instruction "stated that the jury could consider the extent of nudity in deciding whether the visual depiction is lascivious." *Id.* Second, we emphasized the lower court's instruction that "the *Dost* [f]actors were only a guide --

16

non-exhaustive and discretionary." *Id.* at 263.  Third, we underscored that the district court told the jurors that their assessment "need not involve all of the[] [*Dost*] factors" and that the jurors were permitted to decide the appropriate weight for each factor.  *Id.*  And, importantly, the instruction "discouraged the jury from relying on a single factor -- stating that whether a depiction portrays a lascivious exhibition requires consideration of the 'overall context' and 'overall content' of the visual depiction."  *Id.* ("Put succinctly, the court properly instructed the jury that the *Dost* Factors are not mandatory, formulaic or exclusive.") (quotation marks omitted).

In summary, *Sanders* affirmed a district court's reliance on the *Dost* factors where the trial court ensures that the jury: (1) understands that mere nudity is not sufficient to establish a "lascivious exhibition"; (2) is not instructed to rely exclusively on the *Dost* Factors, (3) understands that no single *Dost* Factor is dispositive, and (4) is discouraged from a strict and mathematical application of the *Dost* factors.  107 F.4th at 263.  This rule now governs our analysis of jury instructions defining "lascivious exhibition," including in this appeal.

3.

Post-*Sanders*, Appellant's challenge to the district court's "lascivious exhibition" instruction is confined to whether the court's instruction contained adequate safeguards. We hold that it did.

Walking through the *Sanders* analysis, the district court adequately informed the jury that "mere nudity" was insufficient to convict Appellant by its instruction that "[n]ot every exposure of the genitals or pubic area constitutes a lascivious exhibition."  J.A. 1198.

17

Likewise, the court adequately instructed the jury that it was not to rely exclusively on the *Dost* factors by its instruction that the jury was to "determine whether the visual depiction is lascivious based on its overall content." *Id.* at 1199. And the court explained that no factor was dipositive: "[i]t is for you to decide the weight or lack of weight to be given to any of these factors." *Id.* Read together, these instructions also adequately discouraged the jury from applying the *Dost* factors in a strict or mathematical manner.

Thus, the district court committed no error in its "lascivious exhibition" instruction.

### C.

We turn next to Appellant's assertion that the district court erred by denying his motion for acquittal on Counts One and Two. We review de novo a district court's denial of a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. *United States v. Rodriguez-Soriano*, 931 F.3d 281, 286 (4th Cir. 2019). In conducting our review, we "must ask whether 'there is substantial evidence, taking the view most favorable to the Government, to support the conviction." *Id.* (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005).

Counts One and Two both charged Appellant with violating § 2251(a). As we have explained, in order to obtain a conviction for sexual exploitation of a minor pursuant to § 2251(a), the Government must prove that: (1) the defendant knowingly employed, used, persuaded, induced, enticed, or coerced a person under the age of 18; (2) to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct;

18

and (3) that either the defendant knew or had reason to know that the visual depiction will be transported in interstate commerce, or that the visual depiction has actually been transported in interstate commerce. *See United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012). On appeal, Appellant only challenges the jury's determination that there was substantial evidence of "sexually explicit conduct." As discussed *supra*, "sexually explicit conduct" means, inter alia, "lascivious exhibition of the anus, genitals, or pubic area of any person." § 2256(2)(A).

We readily conclude that the record in this case does not present a close question about the sufficiency of evidence for Count One. Appellant hid a camera to capture footage of his minor stepdaughter's genitals while she was naked. Since this conduct is comparable to the objectively sufficient conduct analyzed in *Courtade*, a reasonable factfinder could accept it as adequate and sufficient to support a conclusion of Appellant's guilt beyond a reasonable doubt.

Any potential argument to the contrary based on the analysis detailed in *Courtade* was resolutely foreclosed by *Sanders*, and our expansion of the scope of inquiry for a "lascivious exhibition." That analysis provides for a consideration of the surrounding circumstances, which includes the fact that Appellant had thousands of images of child sexual abuse material in his possession. From this, a reasonable factfinder could infer that the video "[Appellant] intended to capture was 'sexually explicit conduct,'" Gov't Br. at 63 (emphasis omitted), intended for no other purpose than to "elicit a sexual response in the viewer." *See Sanders*, 107 F.4th at 261 (citing *Dost*, 636 F. Supp. at 832).

19

The analysis of the adequacy of the evidence as to Count Two is even more straightforward. Here too, Appellant only takes issue with whether the image -- of Appellant's penis with his minor stepdaughter's hand -- depicted "sexually explicit conduct." Appellant argues that the picture could not be a "lascivious exhibition" because it does not attract notice to the genitalia of a child. Congress drafted no such limitation into the statute, which criminalizes using a minor to engage in sexually explicit conduct and defines sexually explicit conduct as "lascivious exhibition of the anus, genitals, or pubic area of *any person*." § 2256(2)(A) (emphasis supplied). Viewing this photograph through the plain language of the statute and the lens of *Courtade* and *Sanders*, a reasonable factfinder could find that it adequately supports a conclusion of Appellant's guilt beyond a reasonable doubt.

## D.

Turning next to Appellant's evidentiary argument. We review evidentiary decisions for an abuse of discretion but legal conclusions concerning the Federal Rules of Evidence de novo. *United States v. Benson*, 957 F.3d 218, 228 (4th Cir. 2020). And exclusion of evidence is harmless if this court can "say with fair assurance that the jury's verdict was not swayed by the district court's ruling." *See United States v. McLean*, 715 F.3d 129, 144 (4th Cir. 2013).

Appellant asserts the district court erred by sustaining two objections during Appellant's cross-examination of his ex-wife during the Government's case in chief. The court sustained the Government's objections on the ground that Appellant sought to elicit "impermissible hearsay." J.A. 1059–60. The questioning went as follows:

20

Q: [T]here was a time when [Appellant] had told you not to allow [his stepdaughter] to use that bathroom, right?

MS. RANDALL: Objection.

THE COURT: Sustained.

. . .

Q: Did [Appellant's stepdaughter] have permission to go into that bathroom?

A: She did.

Q: From whom?

A: Me.

Q: Did she have permission from [Appellant]?

MS. RANDALL: Objection.

THE COURT: Sustained.

*Id.* Appellant argues that this questioning sought only to elicit whether Appellant had issued a non-hearsay "command." Appellant Br. at 38. Moreover, Appellant argues, the court's error was so prejudicial that his convictions must be reversed.

Hearsay is an out of court statement offered for the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). In *Kivanc*, we recognized, as other circuits have, that an out of court statement "providing directions from one individual to another do[es] not constitute hearsay." *United States v. Kivanc*, 714 F.3d 782, 793 (4th Cir. 2013) (citing *United States v. Diaz*, 670 F.3d 332, 346 (1st Cir. 2012)); *see also United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) ("The statement '[d]o not accept money from these people' was an order, *i.e.*, an imperative rather than a declarative statement, and it was

21

offered not for its truth, but for the fact that it was said. It was therefore not hearsay.");
*United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006)) ("Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay.").

With the benefit of reasoned consideration without the time constraint under which the district court labored, we conclude that here both questions sought to elicit a non-hearsay command, meaning that the district court erred in sustaining the Government's objections. But this error is subject to harmlessness review. *Kivanc*, 714 F.3d at 792 ("[I]f an evidentiary ruling is found to be erroneous, we review the error for harmlessness."). And this is a hurdle that Appellant is unable to overcome.

With respect to Count One, the jury heard from Appellant himself that his stepdaughter was forbidden from entering the master bathroom where the hidden camera was located. Thus, the jury would be unlikely to be materially swayed by corroborative testimony from Appellant's ex-wife reasserting that same fact. More importantly, the jury heard evidence that Appellant set the camera up so as to capture footage of his stepdaughter in the bathroom, recorded a video of her when he was home alone with her, transferred the video to his computer that very day, and then accessed that video multiple times over the subsequent six months. And if that were not enough, the jury was also presented with evidence that Appellant had thousands of images of child sexual abuse material on his computer and immediately attempted to permanently delete his hard drive when the police showed up on his doorstep. In that context, we have no trouble concluding that the exclusion of the non-hearsay testimony did not substantially sway the jury's verdict to convict with respect to Count One.

22

Moreover, the excluded testimony was irrelevant to the remaining Counts. Appellant argues, though, that the jury would have been more likely to credit his testimony in general if the non-hearsay had been admitted into to evidence. This argument was rebutted most persuasively by the district court itself at sentencing, when it described Appellant's candor at trial: "[Y]ou lied every chance you got and in some of the most incredulous ways. I don't know how you could get up there with even a straight face and ask anybody to believe your testimony." J.A. 1290.

Accordingly, Appellant's assertion that the district court's erroneous exclusion of non-hearsay requires vacating his convictions is without merit.

E.

Last, Appellant challenges the district court's imposition of a special assessment. Because Appellant did not object to the special assessment below, we review his challenge on appeal for plain error. *United States v. McMiller*, 954 F.3d 670, 674 (4th Cir. 2020).

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 provides that a sentencing court "shall assess not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5)" and "not more than $50,000 on any person convicted of a child [sexual abuse material] production offense." 18 U.S.C. § 2259A. In "determining the amount of the assessment . . . the court shall consider the factors set forth in sections 3553(a) and 3572." *Id.*; *see* 18 U.S.C. § 3553(a) (listing "[f]actors to be considered in imposing a sentence"); 18 U.S.C. § 3572(a) (listing factors to be considered in "determining whether to impose a fine"). Here, the district court imposed the statutory maximum of $50,000 for each of Counts Two and Three, and the

23

statutory maximum of $17,000 for Count Four, for a total of $117,000. Appellant argues that because the district court did not consider or make the required findings under §§ 3553(a) and 3572, the special assessments must be vacated.

The error here is straightforward, and substantively uncontested. Appellant is correct that the district court did not conduct any kind of consideration, on the record, of the relevant factors with respect to the special assessment imposed. Nor did the court make any specific findings with respect to the statutory factors prior to imposing the special assessment. Instead, the court conclusorily imposed the maximum special assessments at the end of its sentence, after separately finding that Appellant did not have the wherewithal to pay a fine.

Plain error review, which applies here, requires that there was an error, that was plain, and affected Appellant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). The district court's error readily satisfies this inquiry. Our case law specifies that a district court considering the factors set forth in § 3572 "must make specific fact findings on these factors." *United States v. Taylor*, 984 F.2d 618, 621 (4th Cir. 1993) (quoting *United States v. Harvey*, 885 F.2d 181, 182 (4th Cir.1989)). And we have "vacated fines for which the district court failed to make such findings." *Id.* (collecting cases). Moreover, this error affected Appellant's substantial rights because "absent the error, a different sentence might have been imposed." *United States v. Hernandez*, 603 F.3d 267, 273 (4th Cir. 2010). Here, the court determined that Appellant did not have the wherewithal to pay a fine but nonetheless imposed the maximum special assessment. It

24

follows, therefore, that the court might have imposed a different special assessment if it had properly considered the statutory factors.[7]

The Government's retorts do not warrant a contrary conclusion. The Government asserts that the district court did arguably consider a § 3572 factor when it determined that Appellant did not have the wherewithal to pay a fine. *See* § 3572(a)(1) (directing the court to consider a defendant's "income, earning capacity, and financial resources"). While the Government is correct as to this single factor, this is just one of the eight factors enumerated in the statute. *See* § 3572(a)(1)–(8). The court did not satisfy its obligation by this passing reference.

Accordingly, we vacate the district court's imposition of the special assessment and remand for limited resentencing.

### III.

For the foregoing reasons, Appellant's convictions on Counts One, Two, Three, and Four are each affirmed. We vacate the special assessment and remand for resentencing only as to that issue, so that the district court may consider and apply the relevant statutory factors on the record with regard to the imposition of a special assessment.

*AFFIRMED IN PART AND*
*VACATED AND REMANDED IN PART*

---

[7] We make no inference or speculation as to the court's ultimate disposition on remand.

25